## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SUNGARD ENERGY SYSTEMS INC., | : |
| Complainant, | : CIVIL ACTION |
| | : |
| v. | : NO.  4:07-cv-02205 |
| | : |
| GAS TRANSMISSION NORTHWEST CORP., | : |
| Respondent. | : |

---

**SUNGARD ENERGY SYSTEMS, INC.'S
BRIEF IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD
AND RESPONSE AND OPPOSITION TO
GAS TRANSMISSION NORTHWEST CORP.'S MOTION TO CONFIRM**

---

Dated:  August 20, 2007

Respectfully submitted,

/s/ Harriet E. Miers
HARRIET E. MIERS
  State Bar No. 00000067
  Southern District: 11205
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

ATTORNEY-IN-CHARGE FOR COMPLAINANT,
SUNGARD ENERGY SYSTEMS INC.

OF COUNSEL:

**Locke Liddell & Sapp, PLLC**
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**Locke Liddell & Sapp, PLLC**
Thomas A. Connop
  State Bar No. 04702500
  Southern District: 11449
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**Locke Liddell & Sapp, PLLC**
Vijay A. D'Cruz
  State Bar No. 24028259
  Southern District: 26995
600 Travis Street, Suite 3400
Houston, Texas  77002
(713) 226-1200 Telephone
(713) 223-3717 Facsimile

**Blank Rome LLP**
James T. Smith
Laurence S. Shtasel
One Logan Square
Philadelphia, PA 19103
(215) 569-5371 Telephone
(215) 832-5371 Facsimile

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served on opposing counsel via certified mail/return receipt requested on this 20th day of August, 2007, as follows:

    David W. Elrod
    Elrod PLLC
    500 N. Akard, Suite 3000
    Dallas, Texas  75201

            _____/s/ Vijay A. D'Cruz_____
            Vijay A. D'Cruz

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

SUMMARY OF THE ARGUMENT .....................................................................1

BACKGROUND ....................................................................................................2

AUTHORITY TO VACATE AWARD...................................................................2

ARGUMENT ..........................................................................................................3

    A.    The Panel's Refusal to Grant SunGard a Continuance ............................3

    B.    The Panel's Refusal to Permit SunGard Fair Discovery .........................8

            1.    Discovery Related to TransCanada....................................8
                  and GTN's Replacement System

            2.    Discovery Related to GTN's Damages ..........................13

    C.    The Panel Permitted GTN to Introduce Previously .............................14
        Undisclosed Expert Opinions and Test Results

    D.    The Award Demonstrates a Manifest Disregard for the Law ................18

            1.    The Panel Disregarded the Operative Law .................18

            2.    The Panel Disregarded Undisputed, ..........................18
                  Legally Dispositive Facts

            3.    The Panel Abandoned the Contract ...........................19

            4.    The Award of "Cover Damages" Evidences ...............22
                  a Manifest Disregard of the Law

            5.    The Panel Improperly Awarded Attorneys' Fees .......24

            6.    GTN is Not Entitled to Attorney's Fees in this Action.............25

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITY

## Cases

*Alexander Julian, Inc. v. Mimco, Inc.*,
   29 F.App'x. 700 (2d Cir. 2002) .................................................................4, 7
   (Appdx. Ex. 52)

*Bruce Hardwood Floors v. UBC, Local 2713*,
   103 F.3d 449 (5th Cir. 1997) .......................................................................25

*Coutee v. Barington Capital Group, L.P.*,
   336 F.3d 1128 (9th Cir. 2003) .....................................................................19

*DVC-JPW Investors v. Gershman*,
   5 F.3d 1172 (8th Cir. 1993) ...........................................................................7

*Executone Info. Sys., Inc. v. Davis*,
   26 F.3d 1314 (5th Cir. 1994) .......................................................................19

*Fifth Third Bank of Western Ohio v. U.S.*,
   402 F.3d 1221 (Fed. Cir. 2005)...............................................................22, 23

*Glover v. IBP, Inc.*,
   334 F.3d 471 (5th Cir. 2000) ......................................................................25

*Gulf Coast Indus. Workers Union v. Exxon Co. U.S.A.*,
   70 F.3d 847 (5th Cir. 1995) .........................................................................11

*HCC Aviation Ins. Group, Inc. v. Employers Reinsurance Corp.*,
   No. 05-11118, 2007 WL 1879322 (5th Cir. June 28, 2007)............................19
   (Appdx. Ex. 57)

*Home Indem. Co. v. Affiliated Food Distrib.*,
   No. 96 Civ. 9707(RO), 1998 WL 318657 (S.D.N.Y. June 17, 1998)................12
   (Appx. Ex. 55)

*Home Indem. Co. v. Affiliated Food Distrib.*,
   No. 96 Civ. 9707(RO), 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) .............11, 12, 14, 23
   (Appdx. Ex. 54)

*In re Trans Chem. Ltd.*,
   978 F.Supp. 266 (S.D. Tex. 1997) .................................................................7

*International Union, United Mine Workers of America v. Marrowbone Dev. Co.*,
  232 F.3d 383 (4th Cir. 2000) .....................................................................11, 17

*Kaplan v. Alfred Dunhill of London, Inc.*,
  No. 96 CIV. 0258, 1996 WL 640901 (S.D.N.Y. Nov. 4, 1996) ........................17
  (Appdx. Ex. 56)

*Kergosien v. Ocean Energy, Inc.*,
  390 F.3d 346 (5th Cir. 2004) .....................................................................2, 19

*Laws v. Morgan Stanley Dean Witter*,
  No. CIV A H-04-999, 2005 WL 5329512 (S.D. Tex. June 3, 2005)...................7
  (Appdx. Ex. 53)

*Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltd.*,
  256 F.Supp.2d 594 (S.D. Tex. 2002) ............................................................2

*Roche v. Local 32B-32J Serv. Employees Int'l Union*,
  755 F.Supp. 622 (S.D.N.Y. 1991) ................................................................7

*Ryan Energy Techs. v. CDG-MWD GP, L.L.C.*,
  No. Civ.A. H-04-3135, 2006 WL 213916, (S.D. Tex. Jan. 27, 2006)
  (Lake, J.) ...............................................................................................2, 18
  (Appdx. Ex. 51)

*Scherman v. Kansas City Aviation Center, Inc.*,
  No. 92-2211, 1994 WL 519042 (D. Kan. Aug. 30, 2004) ...............................22
  (Appdx Ex. 58)

*Smith-Weik Machinery Corp. v. Murdock Mach. & Engineering Co.*,
  423 F.2d 842 (5th Cir. 1970) .....................................................................6

*Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 56 v. E.D. Clapp Corp.*
  551 F.Supp. 570 (N.D.N.Y. 1982) ...............................................................17

*Tempo Shain Corp. v. Bertek, Inc.*,
  120 F.3d 16 (2d Cir. 1997).........................................................................11

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*,
  607 F.2d 649 (5th Cir. 1979) .....................................................................12, 22

## **Statutes**

9 U.S.C. § 10(a)(3),(4) ..................................................................................2, 8

SunGard Energy Systems Inc. ("SunGard") submits this memorandum of law supporting its application to vacate, and opposing Gas Transmission Northwest Corporation's ("GTN") motion to confirm, the American Arbitration Association ("AAA") $11,500,000 award entered on June 28, 2007 against SunGard.

## SUMMARY OF THE ARGUMENT

SunGard was denied a fundamentally fair hearing in the underlying arbitration and turns to this Court for relief.   SunGard does not ask this Court to reexamine the merits of the Arbitrators' Award.   Rather, SunGard requests an examination of the Panel's misconduct under the parameters of the Federal Arbitration Act, 9 U.S.C. § 10(a)(3),(4), which crippled SunGard's defense and ensured a flawed result in favor of GTN.  This misconduct included the following:

- The Panel refused to grant a brief continuance of the arbitration hearing even though SunGard's chosen lead trial counsel, James T. Smith, was engaged in an unexpectedly lengthy ongoing trial.   Mr. Smith was integrally involved in every aspect of the GTN case from its inception two years earlier.  Mr. Smith had served for more than a decade as SunGard's national trial counsel.   This was SunGard's only request for a continuance, and was timely advanced five weeks before the hearing date.  The California trial judge went so far as to contact the AAA to explain Mr. Smith's predicament.  Nonetheless, despite the prejudice to SunGard, the Panel ruled that Mr. Smith's conflicting trial was an insufficient reason to justify a modest postponement of the arbitration, forcing SunGard to install a new lawyer as its lead counsel who had no experience in any aspect of this exceedingly complex case just three weeks before the hearing commenced.

- The Panel denied SunGard the opportunity to engage in basic discovery – in particular, with respect to GTN's damages and its true reasons for abruptly terminating the contract in question – and then permitted GTN to offer testimony and argument at the hearing directly related to these subjects, including a $50,000,000 damages model that GTN revealed for the first time at the hearing.

- The Panel abandoned the contract from which its jurisdiction derived and based its Award on SunGard's supposed failure to "meet GTN's business needs," not any failure to meet its contractual requirements.

- The Panel permitted GTN to introduce new evidence and elicit new opinions from its experts that were offered for the first time at the hearing itself and apparently relied on those new opinions in its Award.

- The Panel's Award of "cover" damages manifestly disregarded both the law of cover and the requirement that damages be based on more than utter speculation.

For these reasons SunGard respectfully requests that this Court act in the interests of justice and vacate, not confirm, the Panel's Award pursuant to the FAA and Texas common law.

## BACKGROUND

SunGard incorporates by reference the factual allegations of its Complaint and Application to Vacate Arbitration Award, filed with this Court on July 6, 2007.

## AUTHORITY TO VACATE ARBITRATION AWARD

This Court should vacate, not confirm, an arbitration award pursuant to the FAA, "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced" or "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(3),(4); *Ryan Energy Techs. v. CDG-MWD GP, L.L.C.*, No. Civ.A. H-04-3135, 2006 WL 213916, *5 (S.D. Tex. Jan. 27, 2006) (Lake, J.).

An arbitration award may also be vacated, and should not be confirmed, if it: (1) is contrary to public policy; (2) is arbitrary and capricious; (3) fails to draw its essence from the underlying contract; or (4) displays manifest disregard of the law. *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 354 (5th Cir. 2004); *Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltd.*, 256 F.Supp.2d 594, 605 (S.D. Tex. 2002).

The Panel committed misconduct by refusing to postpone the hearing, upon sufficient cause shown, and by refusing to hear evidence pertinent and material to the controversy, which

severely prejudiced SunGard's rights.  The resulting Award was arbitrary and capricious, failed to draw its essence from the underlying contract, and displayed a manifest disregard for the law. SunGard was deprived of a fair trial and the Panel's Award should be vacated.

## ARGUMENT

### A.     The Panel's Refusal To Grant SunGard a Continuance.

In late January 2007, SunGard's chosen trial counsel, James T. Smith, was called for trial in *Unzipped Apparel, LLC, et al. v. Sweet Sportswear, LLC, et al.*, Superior Court, Los Angeles, Case No. BC319612 (the "Apparel Litigation").  On February 7, 2007, when it became clear that the Apparel Litigation would last for at least another month, SunGard moved for a brief continuance of the March 12, 2007 arbitration hearing due to Mr. Smith's trial commitment.[1] This was SunGard's first request for a continuance, and it was advanced five weeks before the hearing was scheduled to begin.[2]   Judge James R. Dunn, the California state court judge presiding over the Apparel Litigation, took the unsolicited step of contacting the AAA to explain and underscore the unforeseen circumstances that had resulted in Mr. Smith's unavailability for the March arbitration.[3]  Nevertheless, the Panel denied the motion on February 12, 2007, without explanation.[4]

---

[1]  *See* SunGard's 2/7/07 letter-motion (Appdx. Ex. 2), GTN's 2/8/07 response (Appdx. Ex. 3), and SunGard's 2/9/07 reply (Appdx. Ex. 4).

[2]  GTN asserts in its Response to SunGard's Complaint and Motion to Confirm ("Opposition Brief" at pp. 12-13) that SunGard requested and obtained previous continuances of the arbitration hearing date.  That is untrue.  The arbitration date was originally scheduled for March 12, 2007, and that never changed.  *See* Preliminary Hearing Order No. 1 at ¶1 (Appdx. Ex. 5).  GTN also contends in its Opposition Brief (p. 14) that SunGard caused more than two years of delays by supposedly failing to comply with discovery orders.  Again, that is untrue.  The arbitrator selection process was not concluded until June, 2006.  *See* AAA 6/8/06 Notice of Prelim. Hearing (Appdx. Ex. 6). Once the arbitrators were selected and the initial conference held, the entire matter proceeded to conclusion in <u>only nine months</u>.  Prelim. Hearing Order No. 1 (Appdx. Ex. 5).

[3]  *See* SunGard's 2/7/07 letter-motion at ¶2 (Appdx. Ex. 2)  Contrary to GTN's assertion in its Opposition Brief, Mr. Smith did not agree to a trial date of January 2007 in the Apparel Litigation.  The trial date was selected by the trial Judge, and the parties then prepared and signed a stipulation in accordance with the Judge's ruling (as is the required practice in the California state court).  SunGard's 2/9/07 letter at p.2, ¶2 (Appdx. Ex. 4).  That stipulation seemed unlikely to impact a mid-March arbitration date.  *Id.*  It was only when a lengthy trial scheduled to proceed before the Apparel Litigation unexpectedly settled on the eve of trial that the Apparel case was ordered for trial in February

SunGard moved for reconsideration on February 18, 2007, and submitted a Declaration from its General Counsel, Victoria Silbey, explaining the prejudice to SunGard if it could not be represented by its chosen trial counsel in such a fact-intensive, high-value arbitration.  Mr. Smith had been SunGard's national trial counsel for nearly a decade, with extensive experience representing SunGard in software disputes and specialized knowledge concerning software development matters.  Mr. Smith was intimately involved in this arbitration from the outset, overseeing SunGard's factual investigation, preparing its Answer and Counterclaims, handling the arbitrator selection process, meeting with potential SunGard witnesses, organizing trial strategy, overseeing discovery, reviewing voluminous documents, and handling all major depositions, discovery and motion hearings.[5]  The Panel denied the motion for reconsideration, and refused to postpone the hearing.[6]

On review of an arbitrator's denial of a continuance, this Court must evaluate whether there existed a reasonable basis for the decision and whether the denial created a fundamentally unfair hearing.  *Alexander Julian, Inc. v. Mimco, Inc.*, 29 F.App'x. 700, 703 (2d Cir. 2002) (quoting *Bisnoff v. King*, 154 F.Supp.2d 630, 637 (S.D. N.Y. 2001)).  Where the arbitrator has denied a continuance that would have permitted a party to be represented by its chosen trial counsel, the critical question is whether the arbitration was "so complex that representation by anyone other than its designated attorney would be fundamentally unfair." *Alexander Julian*, 29 F.App'x. at 703.  In *Alexander Julian*, the moving party failed to argue how the arbitration was so complex that representation by anyone other than its designated attorney would be fundamentally unfair, so the Second Circuit refused to vacate the award based on the arbitrators'

---

2007. *Id.  See also* SunGard's Motion for Reconsideration of Order Denying Continuance at § A(4) (Appdx. Ex. 7); Declaration of Victoria E. Silbey at ¶9 (Appdx. Ex. 9).
[4]  *See* Panel's 2/12/07 Preliminary Hearing Order re: SunGard's Motion for Continuance at ¶1 (Appdx. Ex. 8).
[5]  *See* Declaration of Victoria E. Silbey at ¶7 (Appdx. Ex. 9).
[6]  *See* 2/20/07 Preliminary Hearing Order Re: SunGard's Motion for Reconsideration of Order (Appdx. Ex. 10).

denial of its continuance request. *Id.* at 703. That is not the case here. SunGard established precisely that situation to the Panel.

The arbitration between SunGard and GTN was exceedingly complex.[7] The claims arose from a $9,000,000 software license and customization agreement pursuant to which SunGard customized GTN's gas pipeline management software to meet GTN's precise specifications for two natural gas pipelines. The parties engaged in discovery concerning GTN's specifications for nine separate software modules: credit, agency, contracting, nominations, notifications, capacity release, scheduling, discounts and rates, and billing. Both parties retained experts in software development and the natural gas pipeline industry to assess whether the customized SunGard software met GTN's documented specifications. Legal issues included the implication of contractual limitations on liability, warranties, nonrefundability and notice and cure provisions, releases, and the applicability of the Texas UCC (perfect tender) or common law (substantial performance). The parties conducted over thirty depositions of fact and expert witnesses, filed hundreds of pages of prehearing briefs and motions, marked nearly one thousand exhibits, and exchanged nearly one million pages of documents in discovery.

After its request was denied,[8] SunGard was forced to retain substitute trial counsel, Laurence S. Shtasel, less than three weeks before the arbitration hearing commenced. Mr. Shtasel had no involvement in the case. He was put in the difficult position of preparing for a lengthy and complex arbitration, as detailed above. SunGard was greatly prejudiced in its efforts

---

[7]  Despite previously arguing that SunGard could easily substitute a junior lawyer or new counsel at arbitration, GTN also notes the extreme complexity of the proceeding, when it suits its needs, to argue that the arbitration award should not be disturbed. *See* GTN's Opposition Brief, pp. 2-4.

[8]  The Panel reasoned that Mr. Smith's colleagues working on the arbitration, Elizabeth Wilburn and Daniel Rhynhart, could handle the matter in his stead. However, SunGard retained Mr. Smith to serve as lead trial counsel based on his extensive trial experience and knowledge of the industry; it did not retain Ms. Wilburn or Mr. Rhynhart, junior attorneys who had no significant trial experience and who were simply assisting Mr. Smith in preparing the case for arbitration. Mr. Smith was SunGard's key lawyer, who had the significant trial experience that was necessary to handle a matter of this magnitude. *See* Declaration of Victoria E. Silbey at ¶8 (Appdx. Ex. 9).

to prepare and present its case without its chosen trial counsel who had invested countless hours in the case since its inception, learning the case and overseeing trial strategy.[9]

The Fifth Circuit Court of Appeals has reversed a trial court's denial of a continuance request where a case was so complex that it demanded a party's chosen counsel. *Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*, 423 F.2d 842 (5th Cir. 1970). In *Smith-Weik*, after defendant's chosen counsel fell ill, the trial court denied the continuance, reasoning that local counsel could represent the client at trial. *Id.* at 844. The Fifth Circuit reversed stating:

> It may have appeared to the trial judge to have been a relatively simple breach-of-contract action, which local counsel was well enough prepared to handle. In the light of the record, we find that the matter was hotly contested on the facts and at issue were a number of legal questions, including (1) proper application of the law of accord and satisfaction, (2) the propriety of awarding anticipatory profits, and (3) the right to punitive damage[s].

*Id.* The Fifth Circuit stated, "[t]he interests of justice in this case required that both parties be represented by able counsel well informed on the facts and the pertinent law." *Id.* The Court reasoned that local counsel's unfamiliarity with the case "tipped the scales so heavily in favor of the plaintiff as to effectively deprive the defendant of its rightful day in court." *Id.* That is very similar to what happened here. SunGard was forced to proceed with a new attorney who was relatively unfamiliar with the case (a case that has far more complex issues than those enumerated in *Smith-Weik*), which deprived SunGard of the ability to effectively present its case.

Moreover, the Panel had no legitimate reason to deny SunGard's request for a minimal adjournment.[10]  GTN contended only that its witnesses and experts would be *inconvenienced,* not unavailable, if the arbitration was rescheduled because they had already made travel

---

[9]  *See* SunGard's Motion for Reconsideration at § A(2)-(3) (Appdx. Ex. 7); Declaration of Victoria E. Silbey at ¶7 (Appdx. Ex. 9).

[10]  Although the Panel stated in its order denying SunGard's Motion for Reconsideration that a continuance would lead to "a substantial delay in the hearing of, at least, six months," *see* 2/20/07 Preliminary Hearing Order denying SunGard's Motion for Reconsideration of Order Denying Continuance at ¶5 (Appdx. Ex. 10), there was no evidence heard to support that conclusion.

arrangements (five weeks in advance) for the arbitration in Portland.  However, GTN is located in Portland, with headquarters only a few blocks from the arbitration situs.[11]  As a result, most of GTN's witnesses did not have to travel for the arbitration.  GTN did not show that it would somehow be unfairly prejudiced by a continuance.[12]

The cases GTN cites in its Opposition Brief (p. 12) in support of the Panel's denial of the requested minimal adjournment are all factually distinguishable.  Among other things, in those cases the arbitrator had already granted at least one continuance.  *See DVC-JPW Investors v. Gershman*, 5 F.3d 1172, 1174 (8th Cir. 1993) (denial of movant's second request for postponement of arbitration); *Roche v. Local 32B-32J Serv. Employees Int'l Union*, 755 F.Supp. 622, 625 (S.D.N.Y. 1991) (denial of movant's fourth request for postponement of arbitration); *In re Trans Chem. Ltd.*, 978 F.Supp. 266, 306-307 (S.D. Tex. 1997) (movant requested and was granted one continuance, and never requested a second continuance).  Moreover, in *Laws v. Morgan Stanley Dean Witter*, No. CIV A H-04-999, 2005 WL 5329512 (S.D. Tex. June 3, 2005), the movant waited until three years into the case to request discovery for the first time, then sought a continuance on the day before the hearing to review the documents produced.  By comparison, here, this was SunGard's first request for a continuance, timely advanced, for good cause shown.  Depriving a party of the effective assistance of counsel on the virtual eve of a lengthy arbitration involving millions of dollars directly violates a key provision of the FAA.

---

[11]  Indeed, GTN had successfully argued for that Portland arbitration locale as one that was convenient for its witnesses after SunGard sought Houston as the arbitration locale.  *See* GTN's Response to SunGard's Locale Motion at p.5 (Appdx. Ex. 11); GTN's Amended Arbitration Statement at ¶1 (Appdx. Ex. 12).

[12]  By comparison, in *Alexander Julian*, the Second Circuit pointed out that the panel had good reason to deny the continuance, since the party opposing the continuance would have been seriously prejudiced by the delay.  The disagreement over whether a license was properly terminated in that case was preventing the opposing party from awarding the license to another manufacturer until the arbitration was concluded.  29 Fed.Appx. at 702.  That was not the case here.

The Panel was guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown and the Award should be vacated. *See* 9 U.S.C. § 10(a)(3).

### B. The Panel's Refusal to Permit SunGard Fair Discovery.

The Award should also be vacated because the Panel refused to hear evidence pertinent and material to the controversy, and engaged in other misbehavior which prejudiced SunGard's rights. *See* 9 U.S.C. § 10(a)(3).

### 1. Discovery Related to TransCanada and GTN's Replacement System.

GTN's motive for terminating the Contract was an issue in this arbitration from the outset. As SunGard alleged in its Counterclaims:

> GTN is no longer interested in the SunGard software because its own business plans have changed due to a change in ownership. In late 2004, GTN was acquired by TransCanada Pipeline ("TCPL"). TCPL is in the process of building its own "next generation" pipeline software. GTN has admitted that it no longer needs or wants the SunGard pipeline software following its change of ownership, since TCPL requires its pipeline companies to implement the same software system and TCPL will require GTN to install the software it is currently developing.[13]

SunGard sought discovery into GTN's motivation for terminating the software project and the involvement of GTN's new corporate parent TransCanada Pipeline ("TransCanada," defined in SunGard's Counterclaims as "TCPL") in GTN's decision to terminate the SunGard Contract and develop a new system that was compatible with TransCanada's system.[14] Shortly after GTN filed for arbitration against SunGard, TransCanada sent its project manager, Jim Clark, to GTN's offices to begin work on development of a gas management system for GTN that would be

---

[13] *See* SunGard's Statement of Claims/Counterclaims at ¶51 (Appdx. Ex. 13).
[14] *See* SunGard's 1st Request for Production seeking budgets and costs associated with GTN's replacement system (Appdx. Ex 14); GTN's responses to SunGard's 1st Request for Production (Appdx. Ex. 15); SunGard's 1st Set of Interrogatories at No. 7 (persons with knowledge re replacement system) (Appdx. Ex. 16); GTN's responses to SunGard's 1st Set of Interrogatories at Resp. to No. 7 (claiming identity of such persons irrelevant) (Appdx. Ex. 17).

synchronized with the TransCanada platform and its preferred development language.[15] SunGard's systems, using Microsoft Visual Basic and JAVA, were inconsistent with TransCanada's IS 5-Year Plan and therefore useless to GTN.[16]   TransCanada ultimately contracted with Online Business Systems to develop the first two phases of the gas management system for GTN, using the Microsoft.NET platform and C#.Net development language.[17]   The system SunGard had been customizing for three years used a different platform and language which TransCanada was not interested in implementing -- or paying for.

GTN objected to such discovery, claiming that it was irrelevant.   SunGard moved to compel, arguing that the documents sought were critical to understanding why GTN abandoned the SunGard system which satisfied GTN's requirements and passed all of the parties' agreed-upon tests.[18]   GTN responded that its motive in terminating the agreement with SunGard -- later referred to as the "Why Question" -- was irrelevant in a breach of contract case and the only relevant question was "did the product work and did it meet the requirements."[19]   The Panel accepted GTN's arguments and denied SunGard's motion to compel, prohibiting SunGard from taking any discovery concerning that critical issue, without explanation.[20]

The Panel also limited SunGard's subpoena to Online Business Systems ("Online"), the vendor hired by TransCanada to provide a "replacement" software system for GTN, as follows:

> The definition of "GTN" shall not include a parent entity such as TransCanada Corporation ("TransCanada") and the definition of "replacement project" shall exclude actions carried on for or by TransCanada; and no documents shall be

---

[15]  J. Clark, Arb. Hr'g Tr. 3/21/07 at 106:7-107:9 and 135:19-136:25 (Appdx. Ex. 48); JX 632 (Appdx. Ex. 18).
[16]  J. Wilson, Arb. Hr'g Tr. 3/19/07 at 154:20-155:7 (Appdx. Ex. 46); C. Hanebuth, Arb. Hr'g Tr. 3/20/07 at 325:9-20 (Appdx. Ex. 47).
[17]  *Id.*; JX 639 (Appdx. Ex. 19).
[18]  *See* SunGard's 11/13/06 Motion to Compel (Appdx. Ex. 20).
[19]  *See* GTN's 11/15/06 Response to SunGard's 11/13/06 Motion to Compel (Appdx. Ex. 21).
[20]  *See* Panel's 11/21/06 Discovery Order No. 3 at ¶2 (Appdx. Ex. 22).

produced and no inquiry shall be made as relates to actions to or on behalf of TransCanada or communications relating to same.[21]

Thus, SunGard was conclusively precluded from taking any discovery concerning the true reason GTN terminated the SunGard Contract.[22]   The Panel then permitted GTN to introduce evidence and advance arguments at trial concerning its motivation for terminating the SunGard contract.   Because GTN could not identify a single contractual requirement that the SunGard software did not satisfy, it argued that it terminated the SunGard contract because the SunGard software did not meet its "business needs," thereby making motive the centerpiece of its case.   In his opening argument, GTN's counsel stated:

> We spent all this time, all this energy, and all this money and SunGard would have you believe they delivered to us a product we could have gone live with. And guess what?  We just simply elected not to do it.  Why would we do that? I've asked that question before.  Why?  Why would we spend that time and money and not accept a product that met our needs? . . . They will have you believe because we were acquired by TransCanada.  There's no proof of anything that TransCanada did or did not do.  In fact, they've already tried to get into that and the Panel has told them not to go there.[23]

The Panel ignored SunGard's objection that it was unfair to permit GTN to make that "why" argument when SunGard had been denied discovery on that precise issue,[24] and permitted GTN to continue to argue throughout the arbitration that SunGard could not answer the "Why

---

[21]  *Id.* at ¶1 (Appdx. Ex. 22).

[22]  GTN asserts in its Opposition Brief (p. 19) that it produced to SunGard "all nonprivileged documents regarding its decision not to accept the SunGard software, including all nonprivileged documents regarding any involvement by TransCanada."  As GTN is well aware, it turned over no documents concerning TransCanada's involvement in its decision to terminate the SunGard software project and build a replacement system that was compatible with TransCanada's software platform.  Instead, GTN categorized all such documents as "privileged."  *See* GTN's Responses to SunGard's Requests for Production (Appdx. Ex. 15) and GTN's Resp. to Motion to Compel (Appdx. Ex. 22).  When SunGard filed a motion to compel those documents, GTN similarly argued they were irrelevant, as detailed above. *Id.*

[23]  *See* GTN Opening St., Arb. Hr'g Tr. 3/12/07 at 24:6-13 and 24:21-25 (Appdx. Ex. 42).

[24]  *See, e.g.*, SunGard's Opening St., Arb. Hr'g Tr. 3/12/07 at 27:14-29:8 (Appdx. Ex. 42); SunGard's Posthearing Brief at p. 39 n. 33 (Appdx. Ex. 23); SunGard's Closing Argument, Arb. Hr'g Tr. 5/21/07 at 61:20 – 63:11 (Appdx. Ex. 50).

Question." SunGard was foreclosed from presenting evidence that would have shown the real reason GTN rejected the software.[25]

The Panel then compounded its error by premising its Award on the very reasoning underlying the "Why Question." *See Gulf Coast Indus. Workers Union v. Exxon Co. U.S.A.*, 70 F.3d 847, 849 (5th Cir. 1995) (finding arbitrator misconduct where the arbitrator based his award on a failure to present evidence after misleading a party into believing that its documentary evidence was admitted into the record); *Home Indem. Co. v. Affiliated Food Distrib.*, No. 96 Civ. 9707(RO), 1997 WL 773712, *4 (S.D.N.Y. Dec. 12, 1997) (vacatur warranted where party precluded discovery on matters directly linked to the award).   The Panel's Award does not identify a single contractual provision that SunGard breached.   Instead, the Panel appears to have created an extra-contractual standard that SunGard's software was required to meet GTN's "business needs," and then concluded that the software did not meet this requirement precisely because GTN rejected the software.

"Vacatur is appropriate . . . when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *International Union, United Mine Workers of America v. Marrowbone Dev. Co.*, 232 F.3d 383, 389-90 (4th Cir. 2000) (vacating award for refusal to hear "highly material and relevant" evidence) (quoting *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19-20 (2d Cir. 1997) (vacating arbitration award and finding "no reasonable basis for the arbitration panel to determine that ... omitted testimony would be cumulative. . . . Said differently, the panel excluded evidence plainly 'pertinent and

---

[25]  GTN asserts in its Opposition Brief (p. 18) that the Panel found that SunGard breached the parties' agreements. That assertion is incorrect.   As detailed in Section D.3 herein, the Panel ignored the Contract from which its jurisdiction derived, and failed to identify anywhere in its Award a single contractual provision that SunGard supposedly breached.

material to the controversy'"). Where the Award entered by the Panel was premised upon the very discovery SunGard sought to take and was denied, the prejudice is manifest.

Pursuant to 9 U.S.C. § 10(a)(3), an arbitration panel cannot "properly bar a party from defending itself by precluding discovery of files central and dispositive to the dispute before it." *Affiliated Food*, 1997 WL 773712 at *5. In circumstances where arbitrators have denied a party discovery of documents central to a dispute, an arbitration award properly may be vacated on the basis that the party has been precluded from obtaining a fundamentally fair hearing. *Id.*; *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 653 (5th Cir. 1979) (vacating damages award based upon matters not submitted to arbitration and *ex parte* receipt of evidence). Indeed,

> [t]he absence of statutory provision for discovery techniques in arbitration ... obviously does not negate the affirmative duty of arbitrators to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other party.... A failure to discharge this simple duty would constitute a violation of FAA §10(a)(3), where a party can show prejudice as a result.

*Affiliated Food*, 1997 WL 773712 at *4 (ordering vacatur where award "was directly linked to the preclusion of Affiliated's discovery"); *see also Home Indem. Co. v. Affiliated Food Distrib.*, No. 96 Civ. 9707(RO), 1998 WL 318657 (S.D.N.Y. June 17, 1998). That is the case here. The Panel's decision to deny SunGard the relevant documentary evidence in the hands of GTN deprived SunGard of a fundamentally fair hearing, and therefore the Award must be vacated.

### 2.    Discovery Relating to GTN's Damages.

The Panel also unjustifiably denied SunGard discovery into GTN's damages. On November 14, 2006, SunGard issued an amended Rule 30(b)(6) notice specifically directed to

GTN's damages claims.[26]  GTN refused to produce a witness for this deposition.  SunGard moved to compel, and the Panel denied SunGard's motion, again without explanation.[27]  After GTN had successfully precluded discovery on its damages claims, contending that its work on the replacement system was "irrelevant to this dispute," GTN presented a new damages model at the arbitration, including previously undisclosed "cover damages" associated with the replacement system.[28]  SunGard objected to, and moved *in limine* to exclude, the new damages model because supporting documents had never been produced and GTN had neither identified nor offered any expert to testify to that model.  The Panel denied SunGard's motion without explanation and permitted GTN to introduce the new model.[29]

GTN's new "cover damages" model, in the amount of $11,500,000, was presented by Jim Clark, a TransCanada project manager, who testified about TransCanada's procurement of a new software system for GTN.[30]  The Panel permitted Clark to testify concerning TransCanada's contract with Online to perform the first phase of system replacement,[31] even though it had refused to allow  discovery of TransCanada's involvement in the replacement project and had limited SunGard's subpoena to Online.[32]  The Panel overruled SunGard's objections to the unfairness of admitting undisclosed damages evidence when it had precluded discovery into those very matters.  The Panel subsequently adopted the $11,500,000 "cover" damages model as

---

[26]  *See* SunGard's 11/14/06 Letter-Motion to Compel reciting total of four anticipated topics and 11/14/06 Amended Notice of 30(b)(6) (Appdx. Ex. 24).

[27]  *See* Discovery Order No. 3 at ¶3 (Appdx. Ex. 22).

[28]  *See* SunGard's 1st Request for Production (Appdx. Ex. 14); GTN's responses to SunGard's 1st Request for Production (Appdx. Ex. 15); SunGard's 1st Set of Interrogatories at No. 7 (Appdx. Ex. 16); and GTN's responses to SunGard's 1st Set of Interrogatories at No. 7 (Appdx. Ex. 17).

[29]  *See, e.g.*, Arb. Hr'g Tr. 3/13/07 at 7:7 – 9:25 (Appdx. Ex. 43).

[30]  In GTN's Preliminary Disclosures filed August 1, 2006, GTN did not identify Jim Clark, the TransCanada employee who testified at arbitration, or any other TransCanada employee.  (*See* GTN's 8/1/06 Preliminary Disclosures (Appdx. Ex. 25))  It was not until December 29, 2006, after the discovery deadline, that GTN identified Jim Clark for the first time as a person with knowledge regarding "GTN's replacement project and the costs and benefits associated with such project."  *See* GTN's 12/29/06 Notice of Supplement to Disclosures and Interrogatory No. 5 at Ex. A, p.2 (Appdx. Ex. 26).

[31]  *See* J. Clark, Arb. Hr'g Tr. 3/21/07 at 106:10 – 110:3 (Appdx. Ex. 48).

[32]  *See* Panel's 11/21/06 Discovery Order No. 3 at ¶2 (Appdx. Ex. 22).

the basis for its monetary award, even though it had deprived SunGard of a fair opportunity to challenge the model.

The Panel's refusal to permit discovery on the pivotal issue of damages precluded SunGard from obtaining a "fundamentally fair hearing" within the meaning of 9 U.S.C. § 10(a)(3). *See Affiliated Food*, 1997 WL 773712 at *3-5 ("touchstone" of fundamental fairness found lacking where party was denied discovery on key issue and panel consequently made interim award without even a facial review of the underlying claim). Accordingly, the Panel's Award should be vacated.

### C. The Panel Permitted GTN To Introduce Previously Undisclosed Expert Opinions and Test Results.

The Panel also permitted GTN's experts to testify at arbitration concerning new opinions that were not disclosed in their reports or in their depositions.[33] Specifically, GTN produced a report from its expert Bruce Webster on January 10, 2007, stating that he tested the SunGard scheduling engine and saw it improperly perform, but providing no details about the testing.[34] At his February 1, 2007 deposition, Webster testified that he had recorded detailed test documentation on his laptop computer with the data inputs and results -- which was not produced despite SunGard's longstanding discovery requests -- but without it he could not recall even the most basic information about those tests.[35]

GTN also produced a report from its expert Jeff Parmet on January 10, 2007, stating that he also tested the scheduling engine and found that it ran slowly.[36] At his February 2, 2007 deposition, Parmet testified that he ran his tests of the SunGard scheduling engine with GTN

---

[33] The Preliminary Hearing Order required that expert reports were to be submitted by January 10, 2007, rebuttal expert reports by January 24, 2007, and expert depositions were to be completed by February 7, 2007. *See* Preliminary Hearing Order No. 4 at ¶2 (Appdx. Ex. 27).

[34] *See* Exhibit JX 620 (Appdx. Ex. 28).

[35] Webster Dep., 2/1/07, 158:18-159:23, 164:6-165:21, 167:5-11, 172:6-179:4 (Appdx. Ex. 29).

[36] *See* Exhibit JX 623 at § 4.2.3.6 (Appdx. Ex. 30).

employee Ruth Clark in September 2006, and he believed she had taken screen shots of his tests.[37]   Again, GTN produced none of the test documentation, including those screen shots, despite SunGard's discovery requests.[38]   Based upon GTN's failure to produce any test documentation and results, SunGard filed a motion *in limine*, seeking to exclude any testimony from Webster or Parmet concerning their alleged testing.[39]   The Panel denied SunGard's motion, without providing any explanation.[40]   At arbitration, the Panel permitted Ruth Clark to testify, over SunGard's objections, that she observed the scheduling engine improperly schedule gas during Parmet's testing, even though she was not an expert and Parmet had stated no such thing in his expert report (or at his deposition),[41] such test results were never disclosed, and SunGard was never provided the testing data.[42]   Thus, an expert's alleged negative test result was disclosed for the first time at arbitration, by a lay person.  Moreover, when Parmet subsequently testified, GTN produced for the first time the screen shots of the testing he performed with Clark more than a year before.[43]   Parmet conceded he had never seen the screenshots, yet the Panel permitted him to read Clark's handwriting on the screenshots stating her opinion that the scheduling engine performed improperly during Parmet's testing.[44]   Such issues were not identified in either of Parmet's expert reports or at his deposition -- his tests concerned only

---

[37]  Parmet Dep., 2/2/07, 231:11-232:5 (Appdx. Ex. 31).

[38]  *See* SunGard's Motion in Limine at § II (Appdx. Ex. 32).

[39]  *Id.*

[40]  *See* Order Regarding Certain Pretrial Motions, dated 3/8/07 (Appdx. Ex. 33).

[41]  R. Clark, Arb. Hr'g Tr. 3/15/07 at 287:2-13 (Appdx. Ex. 44).

[42]  R. Clark, Arb. Hr'g Tr. 3/15/07 at 282:4-287:16 (Appdx. Ex. 44).

[43]  J. Parmet, Arb. Hr'g Tr. 3/16/07 at 305:15-306:25 (Appdx. Ex.45); GTX 817 (Appdx. Ex. 34).  After the Panel denied SunGard's renewed motion to exclude evidence of GTN's expert testing when GTN had never produced the underlying test documentation, SunGard requested that the Panel at least compel GTN to produce all such test documentation during the arbitration.  GTN agreed to do so and produced Parmet's notes -- but not the actual test data -- on the morning of the experts' testimony at arbitration.  *See* Arb. Hr'g Tr. 3/15/07 at 290:17-293:7 (Appdx. Ex. 44); Arb. Hr'g Tr. 3/16/07 at 341:15-19 (Appdx. Ex. 45).

[44]  *See* J. Parmet, Arb. Hr'g Tr. 3/16/07 at 306:17-308:25 (Appdx. Ex. 45).

performance speed -- yet he was permitted to testify about these new issues, and introduce screenshots never before produced, at arbitration.[45]

Similarly, GTN produced Webster's detailed testing notes for the first time at arbitration.[46]  The Panel overruled SunGard's objection to this testing documentation, stating only that SunGard's counsel would have a chance to review it over a lunch break before Webster's cross-examination.[47]  Webster also conceded that he intentionally waited until after he produced his reports and gave his deposition to review and analyze certain Microsoft Visual Source Safe ("VSS") databases produced by SunGard.  Then, rather than submit a supplemental report in accordance with the Panel's orders, Webster prepared documentation that GTN never produced to SunGard.[48]  SunGard moved to compel GTN's production of that detailed VSS documentation -- which Webster admitted was stored on his laptop computer, in his hotel room, only blocks away from the arbitration -- yet the Panel denied the motion without explanation.[49]

SunGard had no fair means to rebut or challenge this new surprise evidence.  GTN's undisclosed expert testing became the "facts" the Panel relied upon in finding that SunGard's software breached the Contract.  The Panel stated that the SunGard scheduling engine improperly scheduled an interruptible contract before a firm contract and also exceeded a constraint.[50]  The Panel adopted that conclusion from the supposed results of a "test" that SunGard heard about for the first time at arbitration.

Although GTN concedes in its Opposition Brief (p. 18) that the Panel permitted its experts to testify on matters outside the scope of their reports, it argues that the Panel allowed

---

[45]  *See id.*; *See also* SunGard's Motion in Limine, 3/2/07, pp. 5-7.
[46]  B. Webster, Arb. Hr'g Tr. 3/16/07 at 146:14-25 (Appdx. Ex. 45)
[47]  *Id.* at 146:19-147:4.
[48]  B. Webster, Arb. Hr'g Tr. 3/16/07 at 230:5-231:13 (Appdx. Ex. 45).
[49]  *Id.* at 232:25-233:7, 268:20-269:25.
[50]  Award at ¶14 (Appdx. Ex. 1).

SunGard's experts to do the same thing.  That is not true.  The Panel strictly confined SunGard's experts' testimony to a narrow reading of their reports, in a one-sided series of rulings.  When SunGard's gas pipeline software expert Sylvia Munson began to testify concerning relevant FERC requirements (of which she was an initial drafter), Arbitrator Bangasser, without hearing an objection, stopped the questioning, stating, "That's not within the scope of her opinion."[51] When Ms. Munson sought to testify concerning the software's database structure, to rebut GTN's testimony, Arbitrator Bangasser stopped her testimony without any objection pending, stating, "I think you're outside the scope of those [expert] reports."[52]

These multiple erroneous and one-sided rulings excluding evidence pertinent and material to the controversy denied SunGard the opportunity to refute the undisclosed evidence introduced by GTN.  *See Kaplan v. Alfred Dunhill of London, Inc.*, No. 96 CIV. 0258, 1996 WL 640901, *7 (S.D.N.Y. Nov. 4, 1996) ("arbitrator violated 9 U.S.C. § 10(a)(3) by refusing to hear evidence pertinent and material to the controversy"); *Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 56 v. E.D. Clapp Corp.*, 551 F.Supp. 570, 578 (N.D.N.Y. 1982) (vacating arbitration award where arbitrator refused to hear party's pertinent and material evidence), *aff'd*, 742 F.2d 1441 (2d Cir. 1983).  Under such circumstances, vacatur is appropriate where "the exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing."  *International Union, United Mine Workers of America v. Marrowbone Development Co.*, 232 F.3d 383, 389 (4th Cir 2000) (citations omitted).

**D.      The Award Demonstrates a Manifest Disregard for the Law.**

**1.      The Panel Disregarded The Operative Law.**

---

[51] S. Munson, Arb. Hr'g Tr. 3/22/07 at 269:21-270:9 (Appdx. Ex. 51).
[52] *Id.* at pp. 274:9-276:24.

This Court has held that vacatur is appropriate where arbitrators "appreciate the existence of a clearly governing principle, but decide to ignore or pay no attention to it." *Ryan Energy Techs. v. CDG-MWD GP, L.L.C.*, Civ.A. H-04-3135, 2006 WL 213916, *7 (S.D. Tex. 2006). SunGard brought to the Panel's attention the legal principles regarding the application of Texas common law, as opposed to the Uniform Commercial Code, to this dispute over a "Software License, Maintenance and Support Services Agreement" (JX 1) at least five separate times -- in a motion to dismiss, a motion for summary judgment, a prehearing brief, in opening statement, and in closing argument. Although the Panel promised to rule on that issue, it never did.[53]  Instead, the Panel manifestly disregarded the Texas common law standard of "substantial performance" in its amorphous analysis of SunGard's Contract performance.[54]  The Award does not reflect that the Panel even considered this critical threshold legal issue, the applicable standard for contract performance.  As a result, the Award is fatally flawed.

## 2.     The Panel Disregarded Undisputed, Legally Dispositive Facts.

The following facts were undisputed at arbitration:   (i) $4,000,000 of the original Contract price constituted a license fee for SunGard's off-the-shelf software and database; (ii) nearly $1,000,000 of the license fee constituted customizations and implementation for the North Baja Pipeline, which GTN successfully implemented in 2002 and has been using continuously the last five years;[55] (iii) SunGard properly customized eight of the nine system modules to meet GTN's documented specifications for the Northwest Pipeline; (iv) SunGard passed all 189 of the

---

[53] *Compare* Arb. Hr'g Tr. 3/12/07 at 56:5-11 (Appdx. Ex. 42), *with* Award (Appdx. Ex. 1).
[54] SunGard argued that the UCC does not apply because the contract primarily involved services, e.g., development of customized enhancements, testing, project management, consulting, installation, implementation and training. Since the UCC did not apply, the Texas common law standard of "substantial performance," not the UCC standard of "perfect tender," should have governed the Panel's analysis of SunGard's contract performance. *See* SunGard's 1/22/07 Motion for Summary Judgment at § II(A)(3)(b)(i) (Appdx. Ex. 35).
[55] *See* JX 001 (Appdx. Ex. 36) and JX 002 (Appdx. Ex. 37).

parties' agreed-upon User Acceptance Tests;[56] and (v) TransCanada (not GTN) paid the $3,000,000 in "cover" for development of only three modules: contracting, nominations, and capacity release.[57]

The Panel did not even note these undisputed facts. "[A] federal court will not confirm an arbitration award that is legally irreconcilable with the undisputed facts. . . . [B]ecause facts and law are often intertwined, an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law." *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003) (citing *American Postal Workers Union v. United States Postal Serv.*, 682 F.2d 1280 (9th Cir. 1982), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983)) (vacating arbitration decision that disregarded undisputed fact of employee's participation in strike, legally barring re-employment).   At the very least, SunGard is entitled to a meaningful setoff for the amounts corresponding to these undisputed facts.

### 3.    The Panel Abandoned The Contract.

An arbitrator's decision must be drawn from the "essence" of the contract. *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1320 (5th Cir. 1994).   "To draw its essence from the contract, the award must, in some logical way, be derived from the wording or purpose of the contract." *Kergosien*, 390 F.3d at 354.   An arbitrator's decision must be "rationally inferable from the letter or the purpose of the underlying agreement." *HCC Aviation Ins. Group, Inc. v. Employers Reinsurance Corp.,* No. 05-11118, 2007 WL 1879322, *4 (5th Cir. June 28, 2007). Here, the Panel ignored the Contract from which its jurisdiction derived and failed to identify a single contractual provision that SunGard supposedly breached.

---

[56] SunGard substantially performed its obligations over the course of three years of work.   Indeed, in addition to the work that GTN paid for, SunGard worked tens of thousands of additional unpaid hours, totaling over four million dollars in unbilled time, in an effort to satisfy GTN.   SunGard's Posthearing Brief at 2-3, 43-47 (Appdx. Ex. 23).
[57] J. Clark, Arb. Hr'g Tr. 3/21/07 at 112:3-113:8 (Appdx. Ex. 48).

Instead, the Panel vaguely stated in its Award that SunGard breached the Contract by failing to provide "material functionality," to meet "the requirements," or to perform the "material obligations" of the Contract.[58] "Specifically," the Panel stated, the customized product did not "meet GTN's business needs."[59] That is not specific, nor is it a contractual requirement. SunGard was not required to customize its software to meet an unstated subjective standard of GTN's "business needs," but rather to customize the software in accordance with detailed written specifications that GTN provided to SunGard.[60] The Panel failed to identify *any* specification that SunGard's software did not satisfy.

The Panel identified "rounding" and "market center allocations" -- both features of the scheduling engine -- and "the structure of the database" as purported deficiencies in the SunGard customized software.[61] However, SunGard presented unrebutted evidence that the Contract did not require it to perform *any* customizations for rounding or database structure.[62] There can be no breach of contract where SunGard had no performance obligation. Furthermore, with respect to market center allocations, GTN's witnesses could not identify a single documented specification that SunGard's software did not satisfy.[63] In sum, there was no evidence at arbitration to support a finding that SunGard's software somehow breached the Contract.

The Panel also found that SunGard failed to provide GTN with a "next generation" pipeline software product, customized to meet GTN's "business needs," by a contractual

---

[58] *See, e.g.,* Award at ¶¶13, 14 (Appdx. Ex. 1).
[59] *Id.* at ¶13.
[60] *See* JX 001 at Addendum A (Appdx. Ex. 36) (stating that all enhancements to the software shall be set forth in Work Orders); JX 002 (Appdx. Ex. 37) (setting forth the customizations required for the North Baja Pipeline); JX 005 at p.2 (Appdx. Ex. 38) ("The scope of customizations [for the Northwest Pipeline] shall be limited to the following... The Customization scope will be defined by these documents.").
[61] Award at ¶¶14-15 (Appdx. Ex. 1).
[62] SunGard was not contractually required to customize any aspect of the database for GTN, since GTN licensed that database *as is* under the contract. *See* Exhibit JX 001 at Terms and Conditions, § 3B (Appdx. Ex. 36).
[63] *See* SunGard's Posthearing Brief at p.11-13, p.16-18 (Appdx. Ex. 23).

deadline.[64]   Again, the Panel created a requirement not contained in the Contract from which it derives jurisdiction.   There was <u>no</u> <u>contractual</u> <u>deadline</u> for SunGard to provide GTN a customized next generation product.   Rather, the Contract required SunGard to "commercially release" a next generation product to market by October 1, 2005.[65]   The unrebutted evidence at arbitration established that SunGard commercially released the next generation product well before that deadline.[66]   Ignoring this unrebutted evidence, the Panel rewrote the Contract to require SunGard to customize the next generation product for GTN's "business needs" by the October 1, 2005 deadline.

The parties' Contract does not permit GTN to charge SunGard for the cost of a new software system; rather, the Contract strictly defines the mechanism for compensation in the event of a breach.[67]   The Contract bars the recovery of any indirect, incidental, consequential, special, exemplary or punitive damages.[68]   The "future cover" damages that the Panel awarded are not true cover or direct damages, and fall within the realm of indirect and incidental damages that are barred by the Contract's limitation of liability provision.

The Panel abandoned the Contract and exceeded its powers in fashioning an extracontractual obligation to "meet GTN's business needs."   By disregarding the explicit, well-defined, and clearly applicable Texas law governing this dispute, significant injustice has inured to SunGard.   *See Ryan Energy*, 2006 WL 213916 at *5.   The Panel's Award fails to draw its essence from the underlying contract and must be vacated.

---

[64]   Award at ¶¶13, 16, 17 (Appdx. Ex. 1).
[65]   *See* Exhibit JX 001 at Addendum A, ¶6 (Appdx. Ex. 23); Exhibit JX 008 at p.3, ¶4 (Appdx. Ex. 39).
[66]   *See* SunGard's Posthearing Brief at § II(5)(a) (Appdx. Ex. 23) (citing Hanebuth, Mandalinci, McClure, Mossop, Richter).
[67]   *See* JX 001 at Terms and Conditions, §8 (Appdx. Ex. 36).
[68]   *Id.*

### 4.    The Award of "Cover Damages" Evidences a Manifest Disregard of the Law.

The Panel improperly awarded GTN far more than it was entitled to under the Contract. Specifically, the Panel awarded GTN $11,500,000 as "cover" -- while the amounts GTN paid to SunGard under the Contract totaled only $7.6 million.  Furthermore, this award of "cover" is itself a manifest disregard of the law, based on insufficient evidence and contrary to applicable law.  A damages award may be set aside for irrationality where it exceeds any claim presented and any available evidentiary support.  *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979).

"Cover damages are… a form of expectancy damages, restoring the plaintiff to the position it would have been in but for the breach by replacing, or covering, the value of an asset taken away by the breach." *Fifth Third Bank of Western Ohio v. U.S.*, 402 F.3d 1221, 1237 (Fed. Cir. 2005).  Before a party may obtain cover damages, it must first demonstrate a good faith attempt to "cover" the breach and must mitigate damages by acting without unreasonable delay. *Scherman v. Kansas City Aviation Center, Inc.*, No. 92-2211, 1994 WL 519042, *6 (D. Kan. Aug. 30, 2004).  The cover damages award is erroneous for at least three reasons.

First, GTN presented no evidence that it incurred any cover costs, only evidence that a third party, TransCanada, incurred a $3,000,000 expense.   This evidence came from a TransCanada employee, Jim Clark, who oversaw the replacement project at GTN.  Clark testified that TransCanada incurred $3,000,000 in costs under a contract with Online Business Systems to build a replacement system for GTN.[69]  The Panel had no basis to award GTN cover costs incurred by a nonparty.

---

[69]  J. Clark, Arb. Hr'g Tr. 3/21/07 at 129:3-5, 140:1-2 (Appdx. Ex. 48).

Second, the Panel forbade all discovery on the crucial issue whether GTN acted in good faith to "cover" the alleged breach, or whether GTN acted in good faith to timely mitigate its alleged damages.[70]

Third, GTN's only mitigation effort was unnecessary. Clark testified that there were expected to be three phases of implementation, but work was only performed in connection with Phase 1 (at an estimate of $3.2 million, that came in under contract at a purported cost of $3,000,000); no estimates were even prepared for the cost of Phases 2 and 3; and TransCanada had not even secured a vendor for Phase 3.[71] Thus, the only cost actually incurred was the $3,000,000, which TransCanada, not GTN, paid for three modules (contracting, nominations and capacity release) that SunGard had already customized to GTN's specifications. There was basis to charge SunGard with the cost of GTN's development of these modules, when GTN could have gone live with the identical SunGard modules.

In light of such evidence, the Panel lacked any rational basis in accepting GTN's surprise "cover" damages theory, articulated for the first time during trial, without examining, or even considering, the alleged facts underlying the theory. Indeed, where an award is granted by an arbitration panel "on the bare assertions of the parties, without even a glance at the underlying dispute or its possible merits," the hearing may fairly be said to lack the "touchstone" of fundamental fairness. See *Affiliated Food*, 1997 WL 773712 at *5. That is the case here.

Furthermore, a tribunal may not award cover damages that are highly speculative. *Fifth Third Bank*, 402 F.3d at 1237 (finding that the method of measuring cover damages by "determining the cost of substituting a different form of capital for the lost goodwill" was highly speculative and based entirely on hypothetical costs that were never actually incurred). Yet that

---

[70] *See* Discovery Order No. 3 at ¶1-2 (Appdx. Ex. 22) (denying discovery re TransCanada and limiting subpoena to Online).
[71] J. Clark, Arb. Hr'g Tr. 3/21/07 at 129:3-17, 114:5-8; 140:1-25, 143:21-144:7 (Appdx. Ex. 48).

is precisely what the Panel did here.  GTN's only witness in support of the model, Jim Clark, conceded he simply wanted to give his employer TransCanada an "idea" of what it might cost, and the $11,500,000 estimate was really a "notional cost" because "very little information was available."[72]  Clark admitted he prepared a net present value calculation, reducing that estimate to present value, but he did not know the number and GTN never disclosed that information or produced that document at trial.[73]  Clark testified that he told TransCanada it would cost a total of $11,500,000 merely as "a rough order of magnitude estimate" to "advance the initiative through."[74]  In short, the $11,500,000 figure was a guess, highly speculative and unsupportable.[75]

### 5.      The Panel Improperly Awarded Attorneys' Fees.

Finally, the Panel improperly and prematurely ruled that GTN was entitled to attorneys' fees and costs, ostensibly because it is the "prevailing party," even though the Panel previously agreed to postpone consideration of either party's right to attorneys' fees until after an interim award.[76]  (Award ¶23.)  The Panel's statement that GTN is entitled to attorneys' fees "due to both Parties' requests for awards of reasonable attorneys' fees in their respective claims and counter-claims, as well as by the terms of the Agreements," has no basis.  SunGard never consented to the "prevailing party" being awarded its attorneys' fees, and SunGard has always denied GTN's claim for attorneys' fees.[77]  The Contract does not allow GTN to recover attorneys' fees and permits only *SunGard* to recover its attorneys' fees in a collection action for unpaid invoices, which was the reason SunGard sought fees as part of its counterclaims.[78]  The

---

[72]  *Id*. at 147:13-25.
[73]  *Id*. at 148:11-24.
[74]  *Id*. at 146:1-148:4.
[75]  *Id*. at 146:1-149:20.
[76]  *See* 3/3/07 Order Re: Timing of and Procedures for Consideration of Claims for Attorneys' Fees (Appdx. Ex. 40).
[77]  *See, e.g.,* SunGard's Answer to GTN's Demand for Arbitration (Appdx. Ex. 41).
[78]  *See* JX 001 at p.1 ("Payment of Fees and Expenses")  (Appdx. Ex. 36).

Panel has not permitted SunGard to challenge GTN's entitlement to attorneys' fees, only the amount of the attorneys' fees awarded, violating its prior rulings and the parties' Contract.

**6.      GTN Is Not Entitled to Attorneys' Fees in this Action.**

GTN also asserts that it is entitled to attorneys' fees in connection with this action to vacate the Award.  However, Fifth Circuit law permits an award of attorneys' fees in this type of action *only* "when a party has refused to abide by an arbitration decision *without justification*." *Bruce Hardwood Floors v. UBC, Local 2713*, 103 F.3d 449, 453 (5th Cir. 1997) (emphasis added).  An award of attorneys' fees against the party asserting a challenge to the arbitration award on allowable grounds is unwarranted.  *See id.* ("[b]ecause we have concluded that the arbitrator exceeded his contractual authority, we do not find that [plaintiff's] refusal to abide by the arbitration decision was without justification… Hence, we reverse the district court's award of attorneys' fees to [defendant].")

Indeed, even where a challenge to an arbitration award ultimately is unsuccessful, an award of attorneys' fees nevertheless is unwarranted so long as the challenge was not frivolous. *See Glover v. IBP, Inc.*, 334 F.3d 471, 477 (5th Cir. 2003).  Here, SunGard has advanced meritorious issues and no award of attorneys fees is appropriate.

## CONCLUSION

For all of the foregoing reasons, SunGard Energy Systems Inc. respectfully requests that an Order be entered denying GTN's motion to confirm, and granting SunGard's request to vacate, the June 28, 2007 arbitration award.