### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SUNGARD ENERGY SYSTEMS INC., | : |
| Complainant, | : CIVIL ACTION |
| | : |
| | : NO.  4:07-cv-02205 |
| v. | : |
| | : |
| GAS TRANSMISSION NORTHWEST CORP., | : |
| | : |
| Respondent. | : |

### SUNGARD ENERGY SYSTEMS INC.'S OBJECTION AND RESPONSE TO
### GAS TRANSMISSION NORTHWEST CORP.'S REQUEST TO STAY PROCEEDING

TO THE HONORABLE JUDGE SIM LAKE:

SunGard Energy Systems Inc. ("SunGard") files this Objection and Response to Respondent Gas Transmission Northwest Corporation's ("GTN") Request to Stay the Proceeding Pending Entry of Final Award and will respectfully show the Court as follows:

**A.     SunGard's Application to vacate the arbitration award should be considered at this time.**

SunGard properly moves to vacate the arbitration award at this time, and GTN's request to stay this proceeding should be denied.  The Arbitration Panel has closed the evidence and issued an award adjudicating both liability and damages, leaving only the ancillary issues of the amount of attorneys' fees, expenses, and interest unresolved.[1]  The Interim Arbitration Award and Order Reopening Record for Limited Purposes (the "Award") clearly provides that, "the arbitration record was closed on June 6, 2007 for all purposes other that the receipt of evidence

---

[1] The Award states, "Accordingly, as agreed by the Parties at the Arbitration hearings, the record herein is held open for the limited purpose of accepting additional submissions from the parties on the award of attorneys' fees and costs."  Award at 15:24 – 16:1.

and legal memoranda related to any party's claims for an award of reasonable attorneys' fees and costs to a prevailing party." Award at 2:7-10.  Moreover, the fact that the Award has been labeled "interim" or that there has been an informal bifurcation of the merits and attorneys' fees issues does not inhibit SunGard's ability to seek to vacate the Panel's improper finding of liability without delay and before the amount of attorneys' fees and interest are determined. Under the circumstances presented in SunGard's Application, proceeding with a motion to vacate is appropriate. *See Crawford Group, Inc. v. Holecamp,* No. 4:06-CV-1274, 2007 U.S. Dist. LEXIS 19159, at *13 (E.D. Mo. Mar. 19, 2007) (attached as Exhibit A).

In *Crawford,* the court permitted the plaintiff to proceed with its motion to vacate under the same circumstances of this case, where an interim award regarding the merits had been issued and a final award determining attorneys' fees and related expenses was still outstanding. *Id.* The *Crawford* court recognized that the language of the interim award (language similar to that found in the Award SunGard seeks to vacate [2]) demonstrated that the parties agreed to informally bifurcate the proceeding. *Id.* at *8.  Because the interim award finally determined the substantive issues on the merits, the *Crawford* court held that this interim award was properly subject to a motion to vacate before remaining ancillary issues were resolved. *Id.* at *13.

In this case, the Panel's final award will not alter or change the liability or damage conclusions of the interim award that SunGard seeks to vacate; as a result, consideration of SunGard's Application is proper at this stage of the arbitration.  *Id.* at *10.  Though the specific issue of proceeding without delay is not addressed in *Netknowledge Tech., L.L.C. v. Rapid Transmit Tech.,* No. 3:02-CV-2406-M, 2007 U.S. Dist. LEXIS 11550 (N.D. Tex. Feb. 20, 2007) (attached as Exhibit B), the Court proceeded to review the substantive decisions of the arbitration

---

[2] Award at 15:24 – 16:1.

panel without all issues resolved. Likewise, several circuit courts have held that the Federal Arbitration Act permits a court to review and vacate an interim arbitration award when the interim award represents the final determination of a discrete issue. *See Providence Journal Co. v. Providence Newspaper Guild,* 271 F.3d 16, 20 (1st Cir. 2001) (award of bifurcated liability phase is a final award subject to judicial review); *Yasuda Fire & Marine Ins. Co. v. Cont'l Cas. Co.,* 37 F.3d 345, 348 (7th Cir. 1994) (arbitral "interim order of security" found to be final award); *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1023 (9th Cir. 1991) (arbitral "interim final order" found to be final and subject to confirmation); *Trade & Transp., Inc. v. Natural Petroleum Charterers, Inc.,* 931 F.2d 191, 195 (2nd Cir. 1991) (partial arbitration award that decided liability found to be a final award); *Island Creek Coal Sales Co. v. Gainsville,* 729 F.2d 1046, 1049 (6th Cir. 1984), *questioned on other grounds in Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529 U.S. 193, 120 S. Ct. 1331 (2000) (arbitration "interim award" that finally disposed of separate, discrete, self-contained issue found to be final award subject to confirmation).

**B.      GTN's reliance on authorities that address stays in the context of cases originally filed in district court is misplaced.**

Typically, motions to stay arise in the context where a party to an arbitration proceeding seeks to stay parallel litigation that could be rendered unnecessary pending the outcome of the arbitration. GTN's motion to stay this proceeding at this time ignores the fundamental fact that if SunGard prevails in its Application, this Court's judgment will render moot any further ancillary decisions of the Panel addressing issues of attorneys' fees, expenses, or interest. In fact, the authority relied upon by GTN only addresses the situation where a prior filed lawsuit is stayed while the issues first presented in the lawsuit are submitted to a subsequently commenced

arbitration.[3]  Conversely, in this case GTN seeks to delay the resolution of the subsequently filed litigation that could render the remainder of the arbitration unnecessary.  If the Award is vacated, it will effectively end the current arbitration proceeding and allow the parties to start anew; if the application to vacate is denied, the arbitration Panel will proceed with rendering an award for the second half of the bifurcated proceeding.  Efficiency is best served by proceeding now.

GTN's stay of this proceeding seeks to compel the parties to incur the burden and the expense of finalizing discrete ancillary issues of an arbitration award while its underlying basis is in dispute.  In this instance, the balance weighs in favor of prompt review of the Award to determine its legitimacy rather than delaying until other ancillary issues are decided.  This Court's decision on the propriety of the Award will best serve the just, speedy, and inexpensive disposition of the issues between the parties if GTN's motion to stay is denied.  The necessity to address the issues presented in SunGard's Application will still exist and further proceedings before the Panel will not resolve any of the issues before this Court.  While SunGard urges the Court to vacate the Award (and believes upon its review, it will do so), the decision of the Court will be of most value rendered without granting a stay and the resulting delay.

**C.     GTN cannot demonstrate that any inequity results from this Court's consideration of vacating the Award's findings of liability and damages at this stage.**

The party seeking a stay bears the burden of justifying the delay in deference to another legal proceeding.  *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).  In order to satisfy its burden, the party seeking stay must "make out a clear sense of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays

---

[3] *See In re Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983); *DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F.Supp.2d 714, 743 (S.D.N.Y. 2003); *Becker v. Silverman*, 638 F.Supp. 193, 198 (S.D.N.Y.1986); *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 Civ 4730, 2000 WL 1858556, at *10 (S.D.N.Y. Dec. 19, 2000) (subsequently filed third-party claims were stayed pending outcome of arbitration).

will work damage to someone else." *Id.* (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). Further, "[w]here a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation." *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985). More specifically, "[a] stay pending adjudication in another tribunal should not be granted unless that tribunal has the power to render an effective judgment on issues that are necessary to the disposition of the stayed action." *Itel Corp. v. M/S Victoria U*, 710 F.2d 199, 203 (5th Cir. 1983). Because SunGard has come before this Court seeking that the propriety of the decisions and findings of the arbitration itself be reviewed, no further disposition of the Panel is necessary to resolve consideration of SunGard's Application. GTN has failed to demonstrate any hardship or inequity that will result from proceeding with the litigation. *See Wedgeworth*, 706 F.2d at 545. To the contrary, both parties will actually benefit from proceeding to resolve the issue of the propriety of the Award prior to the arbitration's completion.

A party facing an unjust arbitration result on the merits is not required to wait until all ancillary issues are decided before seeking relief. Courts have repeatedly held an application to vacate an interim award is proper. GTN has demonstrated no reason this Application presents circumstances calling for delay.

**D.      Prayer**

WHEREFORE, PREMISES CONSIDERED Plaintiff SunGard Energy Systems Inc. prays that this Court deny Defendant Gas Transmission Northwest Corporation's Request to Stay the Proceeding Pending Entry of Final Award, and for such other and further relief, general or special, at law or in equity, to which it may be justly entitled.

Dated:  August 20, 2007           Respectfully submitted,


                              /s/ Harriet E. Miers
                    HARRIET E. MIERS
                     State Bar No. 00000067
                     Southern District: 11205
                    2200 Ross Avenue, Suite 2200
                    Dallas, Texas 75201
                    (214) 740-8000 (Telephone)
                    (214) 740-8800 (Facsimile)

                    ATTORNEY-IN-CHARGE FOR COMPLAINANT,
                    SUNGARD ENERGY SYSTEMS INC.

OF COUNSEL:

**Locke Liddell & Sapp PLLC**
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

**Locke Liddell & Sapp PLLC**
Thomas A. Connop
State Bar No. 04702500
Southern District: 11449
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

**Locke Liddell & Sapp PLLC**
Vijay A. D'Cruz
Texas Bar No. 24028300
Southern District No. 26995
600 Travis Street, Suite 3400
Houston, Texas 77002
(713) 226-1551 (telephone)
(713) 229-2691 (facsimile)

**Blank Rome LLP**
James T. Smith
Laurence S. Shtasel
One Logan Square
Philadelphia, PA 19103
(215) 569-5371 (Telephone)
(215) 832-5371 (Facsimile)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served on opposing counsel via certified mail/return receipt requested on this 20th day of August, 2007, as follows:

David W. Elrod
Elrod PLLC
500 N. Akard, Suite 3000
Dallas, Texas  75201

_____/s/_ Vijay A. D'Cruz_____
Vijay A. D'Cruz

LEXSEE 2007 US DIST LEXIS 19159





Analysis
As of: Aug 14, 2007

**THE CRAWFORD GROUP, INC., Plaintiff, v. WILLIAM F. HOLEKAMP, Defendant.**

**No. 4:06-CV-1274 CAS**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 19159*

**March 19, 2007, Decided
March 19, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion granted by *Crawford Group, Inc. v. Holekamp, 2007 U.S. Dist. LEXIS 41483 (E.D. Mo., June 7, 2007)*

**COUNSEL:** [*1] For Crawford Group, Inc., The, Plaintiff: J. Daniel Sharp, Karen J. Petrulakis, LEAD ATTORNEYS, FOLGER AND LEVIN, San Francisco, CA US; Lawrence C. Friedman, LEAD ATTORNEY, THOMPSON COBURN LLP, St. Louis, MO.

For William F. Holekamp, an individual, Defendant: Edward L. Dowd, Jr., James F. Bennett, LEAD ATTORNEYS, Megan S. Heinsz, DOWD BENNETT, LLP, Clayton, MO US; Steven P. Blonder, LEAD ATTORNEY, MUCH AND SHELIST, Chicago, IL US.

**JUDGES:** CHARLES A. SHAW, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES A. SHAW

**OPINION**

*MEMORANDUM AND ORDER*

This matter is before the Court on defendant William F. Holekamp's ("Holekamp") motion to dismiss. Plaintiff opposes the motion. For the following reasons the Court will deny defendant's motion to dismiss.

**Background**

Plaintiff, The Crawford Group, Inc. ("Crawford"), filed this action to vacate an interim arbitration award under the Federal Arbitration Act ("FAA"), *9 U.S.C. § 10*. Holekamp initiated arbitration with the American Arbitration Association ("AAA") on July 31, 2004. The arbitration involved issues arising under a February 2, 2000 "Stock Award and Shareholder Agreement" between Crawford and Holekamp. The [*2] Agreement provided that Holekamp, a former employee of Crawford's subsidiary Enterprise Rent-A-Car Company, was granted stock in Crawford, subject to terms and conditions including Crawford's right to call the stock and redeem it at a specified price. The issue in the arbitration was whether the redemption price determined by Crawford, when it called the stock in 2004, was correct.

On May 25, 2006, an interim arbitration award was entered, and on August 23, 2006, Crawford filed its complaint in this matter along with a motion to vacate the interim award. In response, defendant filed the instant motion on November 17, 2006, alleging that plaintiff's action should be dismissed because the award it seeks to vacate is only an interim award and leaves several matters unresolved. Defendant argues that under *section 10(a)(4) of the FAA* only a final award can be the subject of a motion to vacate. Defendant concludes that plaintiff improperly seeks to vacate the interim award issued May 25, 2006 instead of the final award issued October 20, 2006.

Crawford responds by offering two separate lines of argument. Crawford first argues that in issuing the in-

terim award the arbitration panel reached [*3] a final decision on the only substantive issue before it for decision. According to Crawford, under the rules of the AAA an interim award can only be modified upon an application made within twenty days after the transmittal of the award. Plaintiff argues that because no application was made within twenty days of the transmittal of the award, it became final and nonmodifiable on June 12, 2006, thus making it reviewable by the Court.

Crawford next argues that because the interim award represented the final determination of a discrete issue, and was not subject to change or revision by the arbitrators, under the FAA the Court has the authority to review and vacate the arbitration panel's interim award. Plaintiff cites a number of cases which it claims support the proposition that "an arbitration award that fully disposes of a separate and independent claim is final for purposes of confirmation under the Act even if other claims remain pending." *Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, 127 F.Supp.2d 482, 490 (S.D.N.Y. 2001).*

Holekamp replies that the issue of whether the interim award could be modified is irrelevant, and that the focus should be on whether the [*4] award was final so as to trigger the provisions of the FAA. Defendant points out that plaintiff cites no authority to support its contention that the modification provisions in the AAA rules affect the finality of an interim award. Defendant asserts that *section 10(a)(4) of the FAA* provides that only a final and definite award can be the subject of a motion to vacate. Defendant argues that the cases cited by plaintiff are not instructive because most of the cases involve interim orders regarding equitable relief to maintain the status quo or to preserve assets. Holekamp suggests that the Court should instead be guided by *Legion Insurance Co. v. VCW, Inc., 198 F.3d 718 (8th Cir. 1999).* In *Legion,* the Eighth Circuit stated, "Whether the award indicates that [it] is final and whether the arbitrator intended the award to be final are factors in determining if an arbitration award is final." *Id. at 720* (quoted case omitted). Defendant contends that because the language in the interim award does not indicate finality, it cannot be considered a final award for the purposes of this action.

**Standard**

The purpose of a motion to dismiss for failure [*5] to state a claim is to test the legal sufficiency of the complaint. A complaint shall not be dismissed for failure to state a claim for which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling it to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).* The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is enti-

tled to present evidence in support of its claim. *Id.; see also Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).* When ruling on a motion to dismiss, this Court must take the allegations of the complaint as true and liberally construe the complaint in a light most favorable to the plaintiff. *Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir.), cert. denied, 540 U.S. 825, 124 S. Ct. 178, 157 L. Ed. 2d 46 (2003).* The Court is, however, "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).*

**Discussion**

Plaintiff first argues that [*6] the Court should treat the interim award issued on May 25, 2006 as a final award because defendant did not seek to modify the award before the twenty-day deadline imposed by AAA Commercial Rule R-46. That rule states:

> Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

AAA Commercial Rule R-46.

The Court finds plaintiff's argument to be unpersuasive. As defendant observes, plaintiff cites no authority that the modification provisions in the AAA rules have any bearing on the finality of an interim award for purposes of judicial review. Additionally, on its face, the rule states that its provisions apply to modifications "to correct any clerical, typographical, or computational errors in the award." The rule [*7] does not state that after twenty days an interim award is converted into a final award, as plaintiff suggests. The rule merely provides a means for correcting clerical, typographical, or computational errors.

Moreover, the interim award in this case anticipated that a final award would be issued outside of the twenty-day window that plaintiff seeks to impose. The interim award states, "This Award shall remain in full force and effect until such time as a final Award is rendered." (In-

terim Award of Arbitrator dated May 25, 2006, at 3). The final award was not issued until October 20, 2006, some 148 days later, and 128 days past the deadline plaintiff seeks to impose. Thus, the Court finds that this argument does not warrant conversion of the interim award into a final award for purposes of this action.

The Court finds more persuasive plaintiff's argument that the interim award can be treated as a final award because it represented the final determination of a discrete issue, and was not subject to change or revision by the arbitrators. This argument is supported by language in both the interim award issued May 25, 2006 and the final award issued October 20, 2006. In this regard the [*8] interim award states:

> Both parties now appear in agreement that this Panel should decide whether, and if so in what amount, attorneys' fees and related expenses incurred in this arbitration should be awarded. This is consistent with the arbitration provisions of the Agreement. At the March, 2006 hearing, the parties agreed to defer the attorneys' fees and related expenses issues until a determination on the merits, which has now been rendered.

*Id.* at 3.

The language of the interim award thus indicates that both the parties and the arbitrators agreed that the arbitration would be bifurcated. First the panel would reach a determination on the merits, and then it would make a determination on the attorneys' fees and related expenses issues. The interim award established a price for the stock and awarded Holekamp a sum of money from Crawford together with interest at the rate of nine percent (9%) per annum until payment. This bifurcated award framework is further supported by language in the final award which states in relevant part:

> The Arbitrators have previously entered an Interim Reasoned Award dated May 25, 2006 with respect to the most significant issues [*9] between the parties. Hearings were resumed on September 27, 2006 for determination of Claimant's Motion for Award of Attorneys' Fees and Reimbursement of Expenses.

Final Award dated October 20, 2006 at 1. The final award thus only addresses the issues of attorneys' fees and expenses and expressly states that the interim award

disposed of "the most significant issues between the parties." *Id.*

The Eighth Circuit has approved of the use of a bifurcated arbitration where the parties have agreed to use such a process. In *Manion v. Nagin, 392 F.3d 294, 296 (8th Cir. 2004),* the plaintiff argued that the bifurcated award procedure employed by the arbitrator should result in vacation of the decision. The Eighth Circuit found Manion's arguments to be unavailing because the arbitrator followed the procedures agreed to by the parties. The Court found that the record indicated the arbitrator would reserve ruling on certain ancillary issues including amounts owed for past wages and dividends, and whether either party was entitled to costs and attorneys fees as the prevailing party. The Court found that this procedure was appropriate and that the interim award "finally [*10] determined the substantive issues of whether Manion was wrongfully terminated and whether his preferred stock had been converted." *Manion, 392 F.3d at 299.*

In the instant action, as in *Manion,* the record indicates that the parties agreed to a bifurcated arbitration process. As noted above, the interim award and the final award both contemplate the two-step process that was utilized by the arbitration panel. In the instant matter, the final award did not alter or change the liability or damages conclusions of the interim award, and merely addressed the ancillary issues of attorneys' fees and expenses.

While the Eighth Circuit has approved of the use of bifurcated arbitration where the parties have agreed to use such a process, there appears to be no clear precedent in this Circuit as to whether an interim award issued in such a process can be treated as final if it represents the final determination of a discrete issue, and is not subject to change or revision by the arbitrators. The Court will therefore look to the law of other circuits for guidance on the issue.

Most of the other circuits have held that an interim award which finally disposes of an independent [*11] claim is subject to judicial review. The First Circuit addressed the issue of whether an award concerning a discrete portion of an arbitration action, or a partial award, is reviewable by the district court, and if so, whether this power extends to a partial award on liability in a bifurcated proceeding. *See Hart Surgical, Inc. v. UltraCision, Inc., 244 F.3d 231, 236 (1st Cir. 2001).* In *Hart,* the First Circuit held that in an arbitration case that is bifurcated into liability and damages phases, the arbitral award with respect to liability is a final award under the FAA. However, that holding was limited to cases in which the parties had formally agreed to bifurcate the arbitration. The court's reasoning in *Hart* was subsequently extended to

situations where bifurcation was informally agreed to. *See Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16 (1st Cir. 2001).*

Other courts have also held that the FAA permits a court to review and vacate an arbitration panel's interim award where the interim award represents the final determination of a discrete issue, and is not subject to change or revision by the arbitrators. *See Yasuda Fire & Marine Ins. Co. of Eur. v. Cont'l Casualty Co., 37 F.3d 345, 348 (7th Cir. 1994)* [*12] (arbitral "interim order of security" found to be a final award because the order was necessary to prevent the final award from becoming meaningless); *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1023 (9th Cir. 1991)* (arbitral "interim final order" providing temporary equitable relief necessary to make potential final award meaningful found to be final and subject to confirmation); *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc., 931 F.2d 191, 195 (2d Cir. 1991)* (partial arbitral award that decided liability found to be a final award); *Island Creek Coal Sales Co. v. Gainesville, 729 F.2d 1046, 1049 (6th Cir. 1984)* (arbitral "interim order" that finally and definitively disposed of separate, discrete, self-contained issue found to be final and subject to confirmation); *Sperry International Trade, Inc. v. Government of Israel, 689 F.2d 301, 304 n.3 (2d Cir. 1982)* (appeals court itself did not consider, but noted that district court found arbitral "award" that was final as to severable issues was final and subject to confirmation).

The district court for the Southern District [*13] of New York addressed this issue in *Home Insurance, 127 F.Supp.2d at 490.* In *Home Insurance*, the court concluded that an interim award which adjudicates a portion of a damages claim, and orders the payment of that sum, is final even though outstanding liability and potential damages issues remained to be resolved with respect to the remainder of the same claim. The court stated that "an arbitration award that fully disposes of a separate and independent claim is final for purposes of confirmation

under the Act even if other claims remain pending." *Id. at 487.*

The Court concludes that the Interim Award of Arbitrator dated May 25, 2006 finally determined the substantive issues on the merits and is thus properly before this Court on plaintiff's motion to vacate. As in *Home Insurance*, the interim award in the instant case orders the payment of a specific sum and even sets a retroactive interest rate per annum until that sum is paid. In addition, as in *Providence*, in the instant action there was an agreed-to bifurcation at the arbitration stage which resulted in an interim award after a determination on the merits.

The Court rejects defendant's [*14] argument that the interim award should not be treated as final based on the Eighth Circuit's decision in *Legion*. In that case, the Eighth Circuit stated that in determining whether an award is final, a court must consider the language of the award and the intention of the arbitrators. As noted above, the Court finds that the language of both the interim award and the final award indicate that the interim award reached a final determination on the merits with respect to the most significant issues. Thus the Court finds that the arbitrators intended the interim award to be final as to the substantive issues in this matter.

Accordingly,

**IT IS HEREBY ORDERED** that defendant William F. Holekamp's Motion to Dismiss is **DENIED.** [Doc. 16]

**IT IS FURTHER ORDERED** that defendant shall have ten days to respond to plaintiff The Crawford Group, Inc.'s Motion to Vacate Arbitration Award. *See Rule 12(a)(4)(B), Fed. R. Civ. P.*

**CHARLES A. SHAW**

**UNITED STATES DISTRICT JUDGE**

Dated this *19th* day of March, 2007.

1071XJ

********** Print Completed **********

Time of Request: Tuesday, August 14, 2007  11:13:06 EST

Print Number:    1823:42438792
Number of Lines: 203
Number of Pages:

Send To:  D'CRUZ, VIJAY
          LOCKE LIDDELL & SAPP PLLC
          600 TRAVIS ST STE 3400
          HOUSTON, TX 77002

LEXSEE 2007 U.S. DIST. LEXIS 11550





Positive
As of: Aug 14, 2007

**NETKNOWLEDGE TECHNOLOGIES, L.L.C., d/b/a NKSoft.Com Corp., Plaintiff, v. RAPID TRANSMIT TECHNOLOGIES, a/k/a WaKuL, Inc., Defendant and Third Party Plaintiff, v. ERICSSON, INC. and JOHN CHOWDHURY, Third Party Defendants.**

**Civil Action No. 3:02-CV-2406-M**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

*2007 U.S. Dist. LEXIS 11550*

**February 20, 2007, Decided**
**February 20, 2007, Filed**

**COUNSEL:** [*1] Netknowledge Technologies LLC, doing business as NK Soft.Com Corp, Plaintiff, Pro se, Nksoft, Irving, TX.

For Rapid Transmit Technologies, also known as Wakul Inc, Defendant: Geoffrey R Unger, LEAD ATTORNEY, Jennifer A Lloyd, DLA Piper US LLP - Austin, Austin, TX.; Greg Dimmick, DLA Piper US LLP - Dallas, Dallas, TX.

For Baron Capital V Inc, formerly known as Baron Capital Trust, Defendant: Gerard J Kimmitt, II, LEAD ATTORNEY, Legge Farrow Kimmitt McGrath & Brown, Houston, TX.

For Ericsson Inc, ThirdParty Defendant: Patrick O Strauss, James N Henry, Jr, Jennifer R Poe, Hallett & Perrin, Dallas, TX.; Christopher D Kratovil, Joseph M Cox, Robert H Mow, Jr, Hughes & Luce - Dallas, Dallas, TX.

For John Chowdhury, ThirdParty Defendant: Pro se, NetKnowledge Technologies, LLC, Irving, TX.; Steven C Simmons, LEAD ATTORNEY, Steve Simmons Law Office, Houston, TX.

For Ericsson Inc, Counter Claimant: Jennifer R Poe, LEAD ATTORNEY, Hallett & Perrin, Dallas, TX.

**JUDGES:** BARBARA M. G. LYNN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** BARBARA M. G. LYNN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Ericsson Inc.'s ("Ericsson") Motion to Vacate, or in the Alternative, [*2] Motion to Modify Interim Award of Arbitrator, Ericsson's Supplemental Motion to Vacate Arbitration Award, and Rapid Transit Technologies a/k/a WaKuL, Inc.'s ("WaKuL") Motion Pursuant to *9 U.S.C. § 9* to Confirm the Award of the American Arbitration Association as the Judgment of the Court. Having considered all briefing and evidentiary submissions in this matter, having heard oral argument from the parties, and for the reasons set forth below, the Court **DENIES** Ericsson's Motion to Vacate and Supplemental Motion to Vacate, **GRANTS** in part Ericsson's Motion to Modify, **GRANTS** WaKuL's Motion to Confirm the Award of the American Arbitration Association, as so modified, and **DENIES** WaKuL's requests for pre-judgment interest and attorneys' fees incurred in defending the award.

Background

This matter arises from Third Party Claims filed by WaKuL against Ericsson in Netknowledge Technologies,

Case 4:07-cv-02205   Document 10   Filed in TXSD on 08/20/07   Page 15 of 20

Page 2
2007 U.S. Dist. LEXIS 11550, *

LLC d/b/a NK Soft.com Corp. v. WaKuL f/k/a Rapid Transmit Technologies, Inc. and Baron Capital V, Inc., for breach of contract, fraud, DTPA violations, and breach of warranty regarding a Master Purchase Agreement ("MPA") executed between the parties for delivery [*3] of Voice over Internet Protocol ("VoIP") technology. On October 21, 2003, the Court stayed WaKuL's claims against Ericsson and ordered the parties to arbitrate the claims.

On January 12, 2004, WaKuL initiated arbitration proceedings against Ericsson before the American Arbitration Association. On October 16, 2005, the Arbitrator, Judge Chuck Miller, granted Ericsson's Motion for Partial Summary Judgment as to WaKuL's DTPA and negligent misrepresentation claims. The Arbitrator held hearings on the remaining claims on January 30 to February 3, February 13, and February 21, 2006. On May 5, 2006, the Arbitrator rendered an interim award in favor of WaKuL, awarding WaKuL $ 2,805,742.63. The Arbitrator based his award of damages solely on a finding that Ericsson fraudulently induced WaKuL to go forward with Ericsson when Ericsson made representations about its ability to deliver VoIP technology to WaKuL. On May 16, 2006, WaKuL submitted its attorneys' fees to the Arbitrator. Ericsson submitted its Response and Objection to that submission on May 30, 2006. The Arbitrator issued his final ruling on June 29, 2006, awarding WaKuL attorneys' fees in the amount of $ 672,188.50, and costs in the [*4] amount of $ 74,345.32. The Arbitrator modified the award, reducing costs to $ 43,695.32, on August 29, 2006.

Ericsson now moves this Court to vacate, or, in the alternative, modify the award. WaKuL moves this Court to confirm the Arbitrator's award and to award it pre judgment interest and attorneys' fees incurred in defending the award.

Standard

"An arbitration award is subject to extreme deference and the scope of review is 'extraordinarily narrow.'" *The Heritage Org., LLC v. Canada (In re The Heritage Org., LLC), No. 3:06-CV-0578-H, 2006 U.S. Dist. LEXIS 69288, 2006 WL 2642204, at *2 (N.D. Tex. Sept. 14, 2006)* (citing *Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 352 (5th Cir. 2004)*). "All doubts whether an arbitration panel exceeded its authority must be resolved in favor of arbitration." *Id.* (citing *Kergosien, 390 F.3d at 355; Executone Info. Sys., Inc., 26 F.3d 1314, 1320-21 (5th Cir. 1994)*).

Analysis

"The statutory bases for vacating an arbitration award are set forth in the Federal Arbitration Act at *9 U.S.C. § 10(a)*, which provides that an award may be vacated:

(1) where the award was procured by corruption, fraud or undue means;  [*5]

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct . . . or any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers.

*Kergosien, 390 F.3d at 353.* "Besides the four statutory grounds, manifest disregard of the law and contrary to public policy are the only nonstatutory bases recognized by this circuit for vacatur of an arbitration award." *Id.*

I. The Arbitrator's Authority to Award Damages

Ericsson's first argument for vacatur of the Arbitrator's award is that the Arbitrator exceeded his powers (1) by awarding almost $ 3 million in damages, despite a limitation of liability provision in the MPA, which limited damages at arbitration to the fees paid by WaKuL under the applicable Statement of Work ($ 300,000) and (2) by awarding damages for WaKuL's fraudulent inducement claim, notwithstanding a merger provision in the contract.

The limitation of liability provision in paragraph 14 of the MPA provides:

Any liability of Ericsson arising from or relating to this Agreement,  [*6] whether based on contract, equity, indemnity, tort (including Ericsson's negligence), intended conduct, strict liability or otherwise will be limited to [WaKuL's] actual, direct damages, and the amount of damages recoverable against Ericsson for all events, acts or omissions shall not exceed, in the aggregate, the prices or fees then already paid by [WaKuL] to Ericsson under the applicable Statement of Work for the products or services that give rise to such liability.

Ericsson argues that this provision was incorporated into the arbitration provision of the contract, which provided that "any such award rendered by the arbitrator shall be strictly in conformance to and in accordance with the terms and conditions of this Agreement, including without limitation the limitation of liability provisions contained herein." MPA P 17, Ericsson App. 16. Ericsson argues that the Arbitrator's award in excess of the limitation of liability ran counter to the contractual terms and therefore failed the "essence" test applied to determine whether an arbitrator has exceeded his authority. Under the so-called "essence" test, an arbitrator's construction of a contract will be enforced if [*7] it is "rationally inferable from the letter or purpose of the underlying agreement." *In re Heritage Org., 2006 U.S. Dist. LEXIS 69288, [WL] at *2* (citing *Glover v. IBP, Inc., 334 F.3d 471, 474 (5th Cir. 2003))*.

The merger provision, paragraph 22 of the MPA, provides:

> This Agreement, each Statement of Work, and all exhibits attached hereto or thereto, each of which is hereby incorporated herein or therein, as applicable, for all purposes, constitute, as of the Effective Date or the effective date of the applicable Statement of Work, as applicable, the entire agreement between Ericsson and [WaKuL] with respect to the subject matter hereof and thereof, and there are not understandings or agreements relative hereto or thereto that are not fully expressed herein or therein. Any other terms or conditions included in any quotes, acknowledgments, bills of lading, purchase orders, invoices or other forms utilized or exchanged by the parties hereto that are in addition to or in conflict with those set forth in this Agreement or the applicable Statement of Work will be of no force or effect and will not be incorporated herein or be binding unless specifically and expressly agreed to in writing by [*8] both parties.

Ericsson argues that the Arbitrator ignored this language in awarding damages for a fraudulent inducement claim based on representations made by Ericsson outside of the MPA.

The Court finds that the Arbitrator did not exceed his authority in awarding damages in excess of the MPA's limitation of liability provision nor in awarding damages for WaKuL's fraudulent inducement claim.

"The scope of an arbitrator's authority is defined by (1) the contract containing the arbitration clause; and (2) the submission agreement." *In re Heritage Org., 2006 U.S. Dist. LEXIS 69288, [WL] at *4.* "If an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001)* (internal citations omitted). The Supreme Court has held that an arbitrator has broad authority to construe a contract: "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because [*9] their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).*

The Court disagrees with WaKuL's argument that Ericsson somehow waived its objections to the Arbitrator's authority because it did not formally object to the Arbitrator's authority to decide the issue. The cases WaKuL cites for this proposition involved situations where the parties submitted claims and issues to arbitration and then later claimed that the arbitrator lacked any authority whatsoever to decide those issues. *See Brook v. Peak Int'l, Ltd., 294 F.3d 668 (5th Cir. 2002)* (holding that a party's failure to timely object to the selection process for the arbitrator waived any later objection to that arbitrator's authority to decide the case); *Gateway Technologies v. MCI Telecommunications Corp., 64 F.3d 993 (5th Cir. 1995)* (holding that a party that "did not object to the award of attorneys' fees prior to the close of arbitration" waived any later objection to the arbitrator's authority to award those fees). Ericsson did not waive its objection to the Arbitrator's authority since it maintained [*10] throughout that the limitation of liability and merger clauses barred the fraudulent inducement claim and limited any award to $ 300,000. *See, e.g.,* Ericsson, Inc.'s Response to Demand for Arbitration at 2-3; Ericsson App. 33-34 (arguing for application of the limitation of liability and merger clauses).

The Court nonetheless finds that the Arbitrator had the authority to interpret the arbitration agreement in such a way as to not give effect to the limitation of liability and merger clauses. The MPA contained a broad arbitration clause, which gave the Arbitrator authority to resolve "[a]ny disputes arising under or relating to" the agreement. *See* MPA P17, Ericsson App. 16. This grant of authority to construe the agreement included the power to void certain provisions of the MPA based on fraud or unconscionability. *See Dunbar Med. Sys. Inc. v. Gammex Inc., 216 F.3d 441, 454 (5th Cir. 2000)* (hold-

ing that the district court did not err in awarding punitive damages for a fraudulent inducement claim, notwithstanding a contractual provision in which a party explicitly released its claim for punitive damages). Ericsson and WaKuL briefed the issues of whether the [*11] limitation of liability and merger clauses applied. In the Interim Award, the Arbitrator explained why he held the merger clause did not bar the fraudulent inducement claim, but did not discuss the limitation of liability provision. It is well settled that "[a]rbitrators need not give reasons for their awards" and "[e]ven when arbitrators do provide a rationale for their awards, courts may not review that reasoning." *Brabham v. A.G. Edwards & Sons Inc., 376 F.3d 377, 385 (5th Cir. 2004)*. The Court therefore finds that the Arbitrator was acting within his authority in construing the MPA in such a way as to not give effect to the limitation of liability and merger clauses.

II. Manifest Disregard for the Law in Awarding Damages

Ericsson also argues that the Arbitrator showed a manifest disregard for the law in awarding damages for WaKuL's fraudulent inducement claim in two ways. First, Ericsson argues that the Arbitrator ignored "well-established Texas law" in awarding damages for fraudulent inducement notwithstanding the merger clause in the MPA. Second, Ericsson argues that the Arbitrator showed a manifest disregard for the law by ignoring two of the required [*12] elements of a fraudulent inducement claim.

"Manifest disregard for the law" "means more than error or misunderstanding with respect to the law." *Brabham v. A.G. Edwards & Sons Inc., 376 F.3d 377, 381 (5th Cir. 2004)*. "The arbitrator[] must have appreciated the existence of a clearly governing principle but decided to ignore or pay no attention to it." *Id. at 381-82* (internal quotation omitted). Furthermore, "the governing law ignored by the arbitrator[] must be well defined, explicit, and clearly applicable." *Id. at 382*.

As to Ericsson's first argument, the Court finds that the Arbitrator did not show a manifest disregard for the law in finding that the merger clause did not prohibit a fraudulent inducement claim. First, Ericsson has failed to show "the existence of a clearly governing principle" that is "well defined, explicit, and clearly applicable." Ericsson relies principally on the Texas Supreme Court's opinion in *Schlumberger Technology Corporation v. Swanson, 959 S.W.2d 171, 41 Tex. Sup. Ct. J. 165 (Tex. 1997)*, in arguing that the disclaimer of reliance in the merger clause conclusively negates the element of reliance, which is [*13] essential to a fraudulent inducement claim. However, the Texas Supreme Court has not held that all merger clauses preclude claims for fraudulent

inducement. The *Schlumberger* court held "that a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement. We emphasize that a disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim." *Id. at 181*. A judge in this district recently emphasized the fact-intensive inquiry used when evaluating whether a merger clause will bar a fraudulent inducement claim:

> The doctrine of *Schlumberger* and *Prudential* is not that disclaimers of reliance must be distinctively phrased. It is that the language and structure of a contract, considered in light of any relevant facts surrounding its formation, must evince intent to disclaim reliance on past representations, rather than acquiescence to obscure, unilaterally imposed conditions of a more powerful party.

[*14]  *Steinberg v. Brennan, No. 3:03-CV-0562-N, 2005 U.S. Dist. LEXIS 15638, 2005 WL 1837961, at *6-7 (N.D. Tex. July 29, 2005)* (citations omitted). The Court finds that *Schlumberger* and its progeny do not constitute a clearly governing principle that all merger clauses between businesses represented by counsel bar a claim of fraudulent inducement.

Even if the Court found that *Schlumberger* did represent such a clearly governing principle, Ericsson has failed to show that the Arbitrator "decided to ignore or pay no attention to it." The Arbitrator cited and interpreted the case in reaching his conclusion:

> Securitization of the case of *Schlumberger Technology Corp. v. Swanson,* relied on by both parties herein, leads to the conclusion that the merger clause does not bar WaKuL's fraudulent inducement claim under the facts of this case. *See Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 177-81, 41 Tex. Sup. Ct. J. 165 (Tex. 1997).* This case represents a classic situation where *Schlumberger* prevents a merger clause from prohibiting evidence of fraud.

Interim Award of Arbitrator at 9, Ericsson App. 10. The Arbitrator also found that the MPA's merger clause was "boilerplate" and "was buried in the final and lengthy paragraph titled 'Miscellaneous. [*15] '" Id. at 9, n.9, Ericsson App. 10. Since the Arbitrator explicitly consid-

ered both "the language and structure" of the MPA and the *Schlumberger* decision in determining that the MPA's merger clause did not bar the fraudulent inducement claim, the Court finds that the Arbitrator did not manifestly disregard the law in awarding damages to WaKuL for a fraudulent inducement claim.

The Court also rejects Ericsson's second argument that the Arbitrator showed a manifest disregard for the law in ignoring two required elements of a fraudulent inducement claim: WaKuL's justifiable reliance and Ericsson's knowledge of the falsity of the representations. A reading of the Award makes clear that the Arbitrator did not "decide to ignore or pay no attention" to those elements:

> It was the false representations by Vaughn, validated later by other Ericsson personnel and management, that ROME development was at a development stage where WaKuL could rely on its appearance within WaKuL's expected time frame under their business model that induced WaKuL to enter into the contracts with Ericsson. This conclusion comes from the Arbitrator [sic] judgment of the credibility, intelligence, conservative [*16] entrepreneur philosophy and reasonableness of the beliefs in Ericsson's assurances demonstrated by the top executives of WaKuL testifying at the hearing as well as deposition testimony.

> There can be no other conclusion drawn from the credible evidence except that Ericsson, through it's [sic] agents and employees above mentioned, committed fraud concerning the existence, viability and scheduling of ROME and that this fraud was the sole inducement for WaKuL to enter into business 'partnership' with Ericsson and sign the LOI, MPA and SOWs. Again, this is not a case of failure to deliver ROME but of fraudulent statements that ROME was being developed.

Interim Award at 6, Ericsson App. 7. The Court finds that these findings show that the Arbitrator considered these elements and do not show that the Arbitrator manifestly disregarded the law in awarding damages for fraudulent inducement.

III. Alleged Computation Errors

In the alternative, Ericsson asks the Court to modify or correct the Arbitrator's award for material mistakes in calculation of the award. *Section 11 of the FAA* permits modification or correction of an award when "there was an evident material miscalculation [*17] of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." *9 U.S.C. § 11(a), (b).* WaKuL conceded at the Court's hearing in this case that the figure it submitted to the Arbitrator as the amount of "its entire reliance damages" was $ 2,494,174.64, though it maintained that the damages it actually suffered far exceeded this number. See WaKuL's Closing Brief at 23, WaKuL App. 46. The Arbitrator awarded WaKuL the sum of $ 2,805,742.63, calculated as "$ 2,494,174.64 + $ 104,939.00 + $ 256,628.99 - $ 50,000.00." See Interim Award at 11, Ericsson's App. 12. Ericsson argues that this calculation double counts some of the categories of damages submitted by WaKuL. At the arbitration hearing, WaKuL submitted its damages evidence in a "Damages Binder," which was divided into twelve categories of damages. Ericsson argues that two categories of damages--total payments to NK Soft and total payments to software vendors--were double counted. Ericsson also argues that the Arbitrator included in its calculation two amounts ($ 579,045.58 and $ 1,176.60) that WaKuL admitted it never paid to IBM.

After the Arbitrator issued [*18] his Interim Award, Ericsson made these same arguments to the Arbitrator. The Arbitrator rejected Ericsson's arguments, finding that "in spite of its title, [Ericsson's] Motion to Modify is an attack on the sufficiency of the evidence, not a true motion to correct clerical errors." Final Ruling on Demand for Arbitration at 2, Ericsson App. 210. The Court finds that, with regard to the double counting of payments to NK Soft and software vendors, the Arbitrator made a material miscalculation of figures. The precise figures of $ 104,939.00 and $ 256,628.99 were included in the total of the twelve categories of damages in WaKuL's Damages Binder of approximately $ 2.5 million dollars and then added to that total again in the Award. The Court finds that the duplication of these figures was a double counting of the same claims for damages. The Court therefore modifies the Award by subtracting those figures from the total, making the Award before fees and costs $ 2,444,174.64.

With regard to the amounts allegedly not paid by WaKuL to IBM, Ericsson has failed to show this Court how its arguments now are any different from the arguments previously rejected by the Arbitrator on sufficiency [*19] grounds. The Court finds that Ericsson has failed to show that "there was an evident material miscalculation of figures" with regard to these payments and therefore that the award is susceptible to modification by this Court pursuant to *Section 11 of the FAA.*

IV. Attorneys' Fees and Costs Awarded at Arbitration

In its Supplemental Motion to Vacate Arbitration Award, Ericsson objects both to the Arbitrator's authority to award fees and costs and to the Arbitrator's overruling its objection to WaKuL's summary submission of its fees.

Ericsson first argues that the Arbitrator exceeded his authority because there existed no basis for awarding attorneys' fees to WaKuL after the Arbitrator declared the MPA void based on fraudulent inducement. Ericsson also argues that the Arbitrator exceeded his authority in awarding costs.

"To determine whether an arbitrator exceeded his powers, we must examine the language in the arbitration agreement." *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003). The MPA, and specifically the MPA's arbitration clause, gave the Arbitrator in this case the authority to award fees and costs. The arbitration clause specified that "[a]ny [*20] disputes arising under or relating to this Agreement shall be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association." The AAA's Rules provide that the "award of the arbitrator(s) may include . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." R-43(d)(ii). Since both parties requested attorneys' fees from the Arbitrator, the Arbitrator was permitted to award fees pursuant to the AAA's Rules. The AAA's Rules also allow an arbitrator to assess costs. R-43(c); R-50.

The MPA's arbitration clause also provided that any arbitration award "shall include an award of attorneys' fees (and the amount of such fees) to the prevailing party." The Arbitrator found, based on the cases cited in *Women's Regional Healthcare, P.A. v. FemPartners of North Texas, Inc.*, 175 S.W.3d 365 (Tex. App.--Houston [1st Dist.] 2005, no pet.), that the arbitration clause survived, despite the voiding of the rest of the contract by the finding of fraudulent inducement. The Arbitrator held that "under the facts of this case, where the Master Purchase Agreement was attacked, [*21] but not specifically the arbitration clause in the agreement, the matter is subject to arbitration and the arbitration provision of the agreement regardless of whether the agreement is upheld or not." Final Ruling at 5, Ericsson App. 213.

The Court finds that the Arbitrator did not exceed his authority in awarding fees and costs since he was plainly "construing or applying the contract and acting within the scope of his authority" given by the arbitration clause in the MPA. *Major League Baseball Players Ass 'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001). [1]

1   Ericsson also argues that "as the Arbitrator was fully aware that absent the fee-shifting provision the law (the "American Rule") would not provide for an award of attorneys' fees to WaKuL, the award of such fees was in manifest disregard of the law." Ericsson's Supplemental Brief at 6. Since the Court finds that the Arbitrator did not exceed his authority in awarding costs and fees under the arbitration clause of the MPA, the Court need not reach this argument.

[*22]   Ericsson also argues that the fees and costs award should be set aside under *9 U.S.C. § 10(a)(3)*, which provides that an award may be vacated "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." In the Interim Award issued May 2, 2006, the Arbitrator provided that, "[t]he parties are to address the issue of attorneys' fees in writing within two weeks of the issuance of this award. Proof of attorneys' fees and time spent may be done in writing. Proof may be by summary, absent objection." Interim Award at 11, Ericsson App. 12. Ericsson did not object to a summary submission in principle but, two weeks after WaKuL submitted its summary of fees, objected to WaKuL's submission as lacking in detail. Ericsson argues that the Arbitrator was guilty of misconduct in overruling its objections to WaKuL's summary submission of its attorneys' fees.

"In order to vacate an arbitration award on the ground of arbitrator misconduct, as provided by *§ 10(c)*, the misconduct must amount to a denial of fundamental fairness of [*23] the arbitration proceeding." *Roche v. Local 32B-32J Service Employees Int'l Union*, 755 F. Supp. 622, 624 (S.D.N.Y. 1991) (internal quotation omitted). The Court finds that Ericsson has failed to show that the Arbitrator's overruling of its objections to WaKuL's summary evidence amounts to such a denial of fundamental fairness. It is clear that an "arbitrator enjoys wide latitude in conducting an arbitration hearing," and that "arbitration proceedings are not constrained by formal rules of procedure or evidence." *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985). "To effectuate its purpose of speedy resolution of disputes, the Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues." *Booth v. Hume Pubrg, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990).

In any event, Ericsson has failed to show that the Arbitrator's award would have been different had the Arbitrator required WaKuL to submit a more detailed submission of its attorneys' fees. Ericsson argues that "without more detail, Ericsson could not fully [*24] ex-

2007 U.S. Dist. LEXIS 11550, *

plore whether WaKuL was seeking fees incurred related to claims upon which it did not succeed, such as those claims for which summary judgment was granted on statute of limitations grounds." Ericsson's Supplemental Motion at 8. However, the Arbitrator held that segregation of attorneys' fees in this case was "inappropriate" because the facts upon which WaKuL's various causes of action were "intertwined to the point of being inseparable." Final Ruling at 3, Ericsson App. 211. Ericsson also argues that the summary submission prevented it from exploring whether the fees charged for work done by paralegals were for "substantive legal work," whether any of the fees charged were for duplicative work, and whether fees charged for prior work were sufficiently related to the arbitration so as to be recoverable. The Arbitrator considered the sufficiency of the submission generally and rejected Ericsson's arguments:

> Respondent also faults the Declarations supporting attorney's fees as inadequate and the amounts requested to be highly inflated. For purposes of Arbitration evidence, the Arbitrator finds to the contrary. Taking the literal wording of the declarations submitted by Claimant, [*25] and reasonable inferences therefrom, the arbitrator finds that the request for attorney fees in the amount set out in Claimant's Attorney's Fees Submission is sufficient to justify the amount requested.

Final Ruling at 3, Ericsson App. 211. Given these findings by the Arbitrator, the Court finds that Ericsson has failed to show how the Arbitrator's overruling its objections to WaKuL's submission of attorneys' fees constituted a denial of fundamental fairness. Vacatur of the award of attorneys' fees and costs under *9 U.S.C. § 10(a)(3)* is therefore denied.

V. Pre-Judgment Interest

In its Motion to Confirm the arbitration award under *9 U.S.C. § 9*, WaKuL asks the Court to award it pre judgment interest, at the rate of 8.25% per annum, from the date of the final ruling (June 29, 2006) until the date set by the Arbitrator for accrual of post judgment interest (July 29, 2006). The Court denies WaKuL's request. The Arbitrator considered and rejected WaKuL's request for pre judgment interest and instead awarded only post-judgment interest, to begin accruing thirty days after rendition of the award. Given the deference afforded to an arbitrator's [*26] ruling, this Court will not reverse the Arbitrator's ruling on pre judgment interest.

VI. Attorneys' Fees for Defending Arbitration

Finally, WaKuL seeks its attorneys' fees incurred in having to defend against Ericsson's Motion to Vacate. "A district court may award attorney's fees against a party making challenges to arbitration awards that are not cognizable under the FAA, are frivolous, or are without legal justification." *ErgoBilt, Inc. v. Neutral Posture Ergonomics, Inc., No. 3-97-CV-2548-L, 2002 U.S. Dist. LEXIS 12459, 2002 WL 1489521, at *9 (N.D. Tex. July 9, 2002)*. The Court finds that Ericsson's arguments for vacatur of the award were not frivolous and exercises its discretion to deny such fees.

Conclusion

For the reasons stated above, the Court concludes that confirmation of the arbitration award pursuant to *9 U.S.C. § 9* is warranted. Ericsson's Motion to Vacate and Supplemental Motion to Vacate are therefore **DENIED**, Ericsson's Motion to Modify is **GRANTED** in part to reduce the amount awarded by $ 361,567.99, and WaKuL's Motion to Confirm the Arbitration Award is **GRANTED**, as to the modified award. WaKuL's requests for pre judgment interest [*27] and attorneys' fees incurred in defending the award are **DENIED**.

**SO ORDERED.**

**DATED:** February 20, 2007.

**BARBARA M. G. LYNN**

**UNITED STATES DISTRICT JUDGE**

    **NORTHERN DISTRICT OF TEXAS**